H. LLOYD HESS AND ERLA M. G. HESS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF BERNICE GARBER, DECEASED, J. FERRY GARBER, EXECUTOR, AND ESTATE OF J. FERRY GARBER, DECEASED, JOHN F. GARBER, EXECUTOR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRANK P. HECKEL AND MARY G. HECKEL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 61221, 63524, 63525. Filed October 24, 1958.

*Richard S. Doyle, Esq.*, for the petitioners.
*William C. Baskett, Esq.*, for the respondent.

WITHEY, *Judge:* The respondent has determined deficiencies in the income tax of the petitioners for 1951 as follows:

| Docket No. | Petitioner | Deficiency |
|---|---|---|
| 61221 | H. Lloyd Hess and Erla M. G. Hess | $7, 138. 00 |
| 63524 | Estate of Bernice Garber, Deceased, J. Ferry Garber, Executor, and Estate of J. Ferry Garber, Deceased, John F. Garber, Executor | 7, 176. 92 |
| 63525 | Frank P. Heckel and Mary G. Heckel | 6, 266. 04 |

Issues presented for decision are (1) whether certain lump-sum cash distributions made as death benefits by two pension trusts to Erla M. G. Hess, J. Ferry Garber, and Mary G. Heckel, following the death of their father, Eli L. Garber, were taxable to the petitioners under section 165 (b) of the Internal Revenue Code of 1939 as gain from the sale or exchange of a capital asset held for more than 6 months, and if so, (2) whether under section 22 (b) (1) (B) of the Code the petitioners are entitled to exclude from gross income certain portions of such distributions, and (3) whether under section 126 (c) of the Code the petitioners are entitled to a deduction of a portion of the estate tax on the estate of their father.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

H. Lloyd Hess and Erla M. G. Hess are husband and wife and reside at Lititz, Pennsylvania. They filed a joint income tax return for 1951 with the collector of internal revenue at Philadelphia, Pennsylvania.

J. Ferry Garber and Bernice Garber were husband and wife during 1951 until Bernice's death on September 28, 1951. Following her death J. Ferry Garber was appointed executor of her estate. They resided in Lancaster, Pennsylvania. J. Ferry Garber for himself and as executor of the estate of Bernice filed a joint income tax return for himself and her for 1951 with the collector at Philadelphia, Pennsylvania. J. Ferry Garber died on October 28, 1957, and John F. Garber, who resides in Lancaster, Pennsylvania, is the duly qualified and acting executor of his estate.

Frank P. Heckel and Mary G. Heckel are husband and wife and reside at Lancaster, Pennsylvania. They filed a joint income tax return for 1951 with the collector at Philadelphia, Pennsylvania.

Eli L. Garber, the father of J. Ferry Garber, Erla M. G. Hess, and Mary G. Heckel, and sometimes hereinafter referred to as decedent, was born February 11, 1864, and died a resident of Lititz, Pennsylvania, on June 16, 1951. From 1925 until his death the decedent was actively employed as president of Penn Dairies, Inc., a Pennsylvania corporation, sometimes hereinafter referred to as Penn. From 1930 until his death he also was actively employed as president of Garber

Ice Cream Company, a Pennsylvania corporation, sometimes hereinafter referred to as Garber.

On September 26, 1941, Penn established a pension plan by executing an employees pension trust agreement, which, with respondent's approval, was amended from time to time and prior to the decedent's death was last amended on November 22, 1950, as of August 21, 1950. In connection with the trust agreement an employees pension board was established and a "Formula of Benefits" was adopted. The trust agreement was in effect at all times pertinent to the instant cases and the trust created thereunder qualified as an exempt trust under section 165 (a) of the 1939 Code and was approved by the respondent.

On September 29, 1943, Garber established a pension plan by executing an employees pension trust agreement, which, with respondent's approval, was amended from time to time and prior to decedent's death was last amended on November 30, 1946. In connection with the trust agreement an employees pension board was established and a formula of benefits was adopted. The trust agreement was in effect at all times pertinent to the instant cases and the trust created thereunder qualified as an exempt trust under section 165. (a) of the 1939 Code and was approved by respondent.

Each of the pension trusts kept its books on the basis of a fiscal year ended September 30.

Under the adopted formulae of benefits of Penn's and Garber's pension plans, reserves are accumulated for employees after they attain eligibility for participation. These reserves are set aside and earmarked for such employees' credit from the annual donations of the corporations and are improved at the rate of 3 per cent. Under each of the pension plans the amount of the annual pension is determined by the number of years of service of the employee and by a percentage of average basic compensation, provided the maximum does not exceed a stated amount per annum. Upon retirement an employee is entitled to receive a pension payable for the life expectancy of such employee according to the Standard Annuitants Mortality Table of 1937; or an employee with the approval of the pension board may elect a 10-year certain and continuous life annuity, or may elect a life pension to continue throughout the lifetime of the employee for such an amount annually as may be procurable from a legal reserve life insurance company at the time of the employee's retirement, based upon the accumulated reserves to the credit of the employee, or as may be determined by actuarial computations.

The formulae of benefits of the two pension plans provide that employees upon application to and with the approval of the pension boards shall be authorized to receive loans from the pension funds upon the furnishing of collateral, conditional that such loans shall be repaid and bear interest as determined by the pension boards, to meet

any emergencies, to pay hospital, sickness, and accident expenses or for any other worthy purpose deemed sufficient by the pension boards.

Under each of the pension plans an employee, with the approval of or upon the request of his employer, may continue his employment beyond retirement age and any funds to the credit of such employee are improved by compound interest and retained in the trust fund, thereby providing for a larger pension to begin at a later date or such pension may commence on a full pension basis or a partial pension basis during the continuation of such employment, according to the election of the employee.

During the years 1941 through 1951 in the case of Penn and the years 1943 through 1951 in the case of Garber, their employees made no contributions to the respective pension trust funds.

The decedent, Eli L. Garber, was covered by the pension plans of Penn and Garber and was a participant in each plan.

The decedent became eligible to participate in the pension plans of Penn and Garber upon the establishment of the plans. He was 77 years of age upon the establishment of Penn's pension plan in 1941 and reached pension age of 82 in 1946. He was 79 years of age upon the establishment of Garber's pension plan in 1943 and reached pension age of 84 in 1948. He continued his employment with Penn and Garber after reaching his respective pension ages, and the funds to his credit under each pension plan were retained in each pension trust and improved by compound interest.

The decedent never obtained any loans from either of the pension trusts nor did he ever receive any retirement benefits under either of the pension plans.

The trust agreements under which each of the pension trusts was created contain identical provisions as follows:

### ARTICLE IV

### TRUST FUND ALLOCATIONS

Section 1. *GENERAL TRUST FUND:* The Trustee and the Pension Board shall consider the entire corpus and the accumulated interest, issues and profits, insurance annuity contract reserves, and any death or other benefits therefrom, as a General Trust Fund, but for bookkeeping purposes, the Trustee shall allocate the General Trust Fund to accounts as follows: (1) Principal or Controlling Account; (2) Employee Individual Accounts; (3) Surplus Reserve Account, as hereinafter defined; and (4) such other accounts as may be determined by the Pension Board from time to time.

Section 2. *PRINCIPAL OR CONTROLLING ACCOUNT:* The Principal or Controlling Account shall consist of all donations of Property, real, personal or mixed, of whatsoever kind or character, received from the Corporation or from any other source, and all interests, dividends, issues and profits, and said account shall be credited with (1) all general expenses paid for the operation of the Trust Fund, (2) with insurance or annuity premiums paid to insurance companies for contracts carried by the Trustee as an investment; and (3) with

amounts paid as benefits to any employee or beneficiary hereunder for such other payments as may be directed from time to time by the Pension Board, and (4) with amounts allocated to the surplus reserve accounts or for amounts to provide special benefits hereinafter adopted by the Pension Board *with the approval of* the Corporation and the *Commissioner of Internal Revenue,* and in accordance with such approved formula of benefits.

The following is a statement of the income from investments of Penn pension trust for the fiscal years ended September 30, 1941, through September 30, 1952, together with the number of participating employees:

| Year ended Sept. 30 | Interest from mortgages | Interest from bonds | Dividends on stocks | Gains or losses on sale or exchange of securities | Rents | Insurance proceeds | Number of participating employees |
|---|---|---|---|---|---|---|---|
| 1941 | | | | | | | 21 |
| 1942 | $50.00 | $660.00 | | | | | 23 |
| 1943 | 150.00 | 3,300.00 | | | | | 157 |
| 1944 | 227.02 | 3,300.00 | $1,262.50 | $195.00 | | | 165 |
| 1945 | 2,181.06 | 4,970.00 | 5,981.90 | 700.00 | | | 246 |
| 1946 | 823.84 | 12,560.00 | 8,489.75 | 1,571.64 | | | 309 |
| 1947 | 800.54 | 18,450.00 | 11,786.76 | 2,119.21 | | | 336 |
| 1948 | 1,381.33 | 23,140.00 | 15,933.02 | | | $10,476.03 | 367 |
| 1949 | 2,094.33 | 17,284.00 | 18,607.51 | [1] 2,092.48 | $3,500.00 | 6,144.28 | 385 |
| 1950 | 3,151.39 | 16,148.00 | 23,507.74 | 3,820.87 | 8,400.00 | | 409 |
| 1951 | 3,234.66 | 15,018.31 | 35,479.94 | 40,082.68 | 8,400.00 | 4,914.17 | 437 |
| 1952 | 3,369.49 | 15,382.31 | 29,930.01 | 11,458.59 | 9,992.45 | 8,026.08 | 453 |
| Total | 17,463.66 | 130,212.62 | 150,979.13 | 57,855.51 | 30,292.45 | 29,560.56 | |

[1] Losses.

The following is a statement for the fiscal years ended September 30, 1941, through September 30, 1952, with respect to the Penn pension trust fund showing the total amount of assets in the fund at the beginning of the year, corporate contributions to the fund during the year, payments or disbursements to beneficiaries during the year, and the total amount of assets in the fund at the close of the year:

| Year ended Sept. 30 | Total assets in fund at beginning of year | Corporate contributions | Payments or disbursements to beneficiaries | Total assets in fund at close of year |
|---|---|---|---|---|
| 1941 | | $25,000.00 | | $25,000.00 |
| 1942 | $25,000.00 | 50,000.00 | | 75,758.49 |
| 1943 | 75,758.49 | 139,493.21 | | 217,461.41 |
| 1944 | 217,461.41 | 141,014.82 | | 362,252.89 |
| 1945 | 362,252.89 | 181,266.99 | | 543,448.49 |
| 1946 | 543,448.49 | 158,000.00 | $2,776.06 | 718,170.37 |
| 1947 | 718,170.37 | 192,565.15 | 3,060.97 | 930,449.61 |
| 1948 | 930,449.61 | 95,000.00 | 15,233.10 | 1,044,840.13 |
| 1949 | 1,044,863.01 | 107,000.00 | 20,329.83 | 1,186,979.02 |
| 1950 | 1,186,979.02 | 100,000.00 | 14,090.48 | 1,322,193.10 |
| 1951 | 1,322,193.10 | 100,000.00 | 17,662.18 | 1,499,176.22 |
| 1952 | 1,499,176.22 | 200,000.00 | 96,567.34 | 1,653,239.65 |
| Total | | 1,489,340.17 | 169,719.96 | |

The following is a statement of the income from investments of Garber pension trust for the fiscal years ended September 30, 1943,

through September 30, 1952, together with the number of participating employees:

| Year ended Sept. 30 | Interest from mortgages | Interest from bonds | Dividends on stocks | Profits or losses on sale of securities | Rents | Insurance proceeds | Number of participating employees |
|---|---|---|---|---|---|---|---|
| 1943 | | | | | | | 17 |
| 1944 | $62.50 | | $94.40 | | | | 15 |
| 1945 | 250.00 | $440.00 | 188.80 | | | | 17 |
| 1946 | 235.62 | 605.00 | 594.45 | | | | 16 |
| 1947 | 152.48 | 635.00 | 1,133.84 | | | | 16 |
| 1948 | | 683.33 | 2,059.80 | $284.82 | | | 18 |
| 1949 | | 334.17 | 2,607.37 | 28.50 | | | 18 |
| 1950 | | 682.50 | 3,027.23 | 2,621.49 | $779.00 | | 20 |
| 1951 | 418.07 | 455.00 | 2,526.91 | 388.41 | 2,379.75 | $6,177.16 | 21 |
| 1952 | 608.50 | 240.14 | 2,881.26 | [1] 3,698.66 | 2,034.19 | | 16 |
| Total | 1,727.17 | 4,075.14 | 15,114.06 | [1] 375.44 | 5,192.94 | 6,177.16 | |

[1] Losses.

The following is a statement for the fiscal years ended September 30, 1943, through September 30, 1952, with respect to the Garber pension trust fund showing the total amount of assets in the fund at the beginning of the year, corporate contributions to the fund during the year, payments or disbursements to beneficiaries during the year, and the total amount of assets in the fund at the close of the year:

| Year ended Sept. 30 | Total assets in fund at beginning of year | Corporate contributions | Payments or disbursements to beneficiaries | Total assets in fund at close of year |
|---|---|---|---|---|
| 1943 | | $12,121.47 | | $12,121.47 |
| 1944 | $12,121.47 | 11,561.73 | | 23,849.77 |
| 1945 | 23,849.77 | 13,094.64 | | 36,539.74 |
| 1946 | 36,539.74 | 11,972.35 | | 49,614.66 |
| 1947 | 49,614.66 | 11,000.00 | | 61,956.83 |
| 1948 | 61,956.83 | 12,771.66 | | 77,123.58 |
| 1949 | 77,123.58 | 12,956.57 | $860.38 | 91,747.78 |
| 1950 | 91,747.78 | 13,278.84 | 161.00 | 108,924.42 |
| 1951 | 108,924.42 | 14,275.89 | 1,161.00 | 126,130.51 |
| 1952 | 126,130.51 | 10,846.40 | 28,627.69 | 110,000.81 |
| Total | | 123,879.55 | 30,810.07 | |

Each of the pension plans provides that upon the death of an employee the accumulated reserves earmarked for an employee and contributed by the employer, less loans, advances, benefits, pension payments, or cash payments previously made, will be paid as death benefits.

The pension plan of Penn, as amended on August 21, 1950, provides that the death benefits are to be paid to the employee's designated beneficiary, or beneficiaries, and in the absence of a designated beneficiary, or beneficiaries, then to any surviving spouse, children, parents, brothers, sisters, or to the deceased employee's estate, in accordance with the direction of the pension board.

The pension plan of Garber provides that the death benefits are to be paid to such spouse, heir or heirs, dependent or dependents of the deceased employee as the employee shall designate, and upon the failure of the employee to designate a beneficiary, then to the estate of such deceased employee.

On August 4, 1950, the decedent executed and filed with the pension boards of Penn and Garber documents designated "Beneficiary and Employee Information" in each of which he requested that disposition of any credits to him remaining at his death be made as follows:

Pay or distribute to: any or either of my children, my children's spouses, my grandchildren, their spouses and issue, or to the survivor of them, in such proportions and with payments in such amounts and at such times as the Pension or Retirement Board shall determine is for the best interests of the said beneficiaries, and as such distribution and payments may be amended by said Board from time to time.

As of the date of the decedent's death, the accumulated reserves under the adopted formulae as improved by interest and set aside, earmarked, and credited to the decedent totaled $60,823.14 under the pension plan of Penn and $24,714.12 under the pension plan of Garber.

Under the terms of the pension plans and pursuant to the decedent's request respecting distribution of such credits, the respective pension boards directed the respective trustees to make payment of the foregoing amounts to three of decedent's children as follows "upon said children of Eli L. Garber executing a Beneficiaries' Application and Release—Form 32":

FROM PENN EMPLOYEES' PENSION TRUST FUND

| | |
|---|---|
| Erla Garber Hess | $20,274.38 |
| Mary Garber Heckel | 20,274.38 |
| J. Ferry Garber | 20,274.38 |
| Total | 60,823.14 |

FROM GARBER EMPLOYEES' PENSION TRUST FUND

| | |
|---|---|
| Erla Garber Hess | $8,238.04 |
| Mary Garber Heckel | 8,238.04 |
| J. Ferry Garber | 8,238.04 |
| Total | 24,714.12 |

On December 18, 1951, the trustees of the pension trusts of Penn and Garber made distributions and payments to the children of the decedent in accordance with the foregoing direction of the pension boards.

In their respective joint income tax returns for 1951 the recipients of the above-mentioned payments made mention of their receipt of the

payments but stated that the amounts thereof were not included in income because they were not considered to be taxable income. In determining the deficiencies here involved the respondent determined that the payments constituted income to the recipients taxable as gain from the sale or exchange of a capital asset held for more than 6 months.

OPINION.

The first question for determination is whether the respondent erred in determining that the lump-sum cash distributions made in December 1951 to Erla M. G. Hess, Mary Garber Heckel, and J. Ferry Garber from the Penn pension trust and the Garber pension trust, following the death of their father, Eli L. Garber, were income to them taxable as gain from the sale or exchange of a capital asset held for more than 6 months.

Taking the position that the contributions made by Penn and Garber to the respective trusts during their respective lives and through their fiscal year 1952 became corpus of the trusts at the time contributed and that the income received by the respective trusts during such years from investments was annually added to the corpus of the trusts by their respective trustees, the petitioners contend that the distributions in question were distributions of corpus or capital of the trusts and were not distributions of income of the trusts. On the basis that the distributions were corpus or capital of the trusts the petitioners make various arguments as to why the distributions were not income and were not taxable as such to the distributees.

Each of the trust agreements under which the respective trusts were created provides that, except for the expenses of administration of the trust, no part of the fund of the trust shall be used for purposes other than for the exclusive benefit of the corporation's employees or their dependents and that no part of such funds shall inure for the benefit of the corporation. Further, each of the trust agreements specifically recites the intent of the corporation that the pension trust "shall be set up within the Provisions of Section 165 (a) of the Internal Revenue Code, as amended by the 1942 Revenue Act now in effect, pertaining to Pension Trusts," and provides for modification of any portion of the agreement found to be in conflict with "the said Revenue Act" and for such further modification as might be required by future laws of the United States relating to employees' retirement or pension plans. In view of the foregoing and since the parties herein have stipulated that the Penn and Garber pension trusts qualified as exempt trusts under section 165 of the Code, we construe the stipulation to mean that the trusts qualified as exempt trusts

under section 165 (a) of the Code. Pertinent portions of section 165 are set out below.[1]

In addition to the above-mentioned provisions that funds of the trust were not to be used for purposes other than for the exclusive benefit of the corporation's employees and dependents, statements contained in the trust agreement under which the Garber pension trust was created show that the purpose of the corporation in creating the trust was to provide an incentive for its employees to continue in its service until their retirement and to provide a reward to them for the services rendered while so continuing their association with the corporation. Although the trust agreement under which the Penn pension trust was created does not contain statements so specific as to the purpose of creation as are contained in the Garber trust agreement, we find nothing in the Penn trust agreement or otherwise in the record to indicate that Penn's purpose in creating the Penn pension trust was substantially different with respect to its employees from what Garber's purpose was with respect to its employees. Accordingly, for present purposes we will regard the trusts as having been established to provide incentives for the employees of the respective corporations to continue in the service of their respective employers until retirement and to compensate the employees for services rendered while so continuing their associations with the corporations.

In view of the foregoing and since each of the trusts qualified for exemption under section 165 (a) of the Code, the contributions made by Penn and Garber to their respective pension trusts constituted,

---

[1] SEC. 165. EMPLOYEES' TRUSTS.

(a) EXEMPTION FROM TAX.—A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary—

(1) if contributions are made to the trust by such employer, or employees, or both, for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan ;

(2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries ;

(3) if the trust, or two or more trusts. or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection * * *

*       *       *       *       *       *       *

(b) TAXABILITY OF BENEFICIARY.—The amount actually distributed or made available to any distributee by any such trust shall be taxable to him, in the year in which so distributed or made available, under section 22 (b) (2) as if it were an annuity the consideration for which is the amount contributed by the employee, except that if the total distributions payable with respect to any employee are paid to the distributee within one taxable year of the distributee on account of the employee's separation from the service, the amount of such distribution to the extent exceeding the amounts contributed by the employee. shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. * * *

under section 23 (p) of the Code,[2] allowable deductions to the corporations as representing sums paid into the trusts as compensation of employees.[3] Such being the character of the corporate contributions to the trusts we think it is apparent that the funds of the respective trusts consisted (1) of income representing compensation of employees and (2) of income from investments made by the trusts. If the funds of the respective trusts consisted of anything other than the foregoing two classes of income, it is not apparent from the record. The first class of income was not taxable to the employees currently as paid into the trusts.[4] Under the provisions of section 165 (a) neither class of income was taxable to the trusts.

While it is true the term "corpus" appears in the trust agreements, we are unable to find from the agreements or any other portion of the record that that term is used in the sense that it is used in the case of the historical trust, such as where one transfers property in trust with directions that the income therefrom be distributed to one person for a stated period and that upon the expiration of such period the corpus be distributed to another. Each of the trust agreements specifically directs that except for bookkeeping purposes the trustee and the pension board shall consider "the entire corpus" and the accumulated income of the trust as a general trust fund. Further, each of the trust agreements directs that the principal or controlling account maintained for bookkeeping purposes shall consist of all donations of

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *

*　　　*　　　*　　　*　　　*　　　*　　　*

(p) CONTRIBUTION OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.—

(1) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent:

(A) In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 165 (a) * * *

[3] REGULATIONS 111, sec. 29.23 (p)–1, provides as follows: A contribution under a plan that is set up for the exclusive benefit of employees as such, and thus represents an item of expense, is of the nature of compensation for personal services rendered by the employees covered by the plan. * * *

[4] REGULATIONS 111, sec. 29.165–6, provides as follows: If an employer makes a contribution for the benefit of an employee to a trust for the taxable year of the employer which ends within or with a taxable year of the trust for which the trust is exempt under section 165 (a), the employee is not required to include such contributions in his income except in the year or years in which such contributions are distributed or made available to him. * * *

property received from the corporation and all income of the trust. Thus, for bookkeeping purposes, each trust agreement directs the inclusion in the same account of sums received as donations from the corporation and the sums received as income from investments of the trust.

From a consideration of all of the evidence bearing on the question including the character and nature of the pension trusts, the purpose for which created, and the sources and character of the sums received by them, we are unable to conclude, as petitioners contend, that the distributions in question were of corpus or capital of the trusts. In view of what has been said heretofore we think it is clear that such distributions were not only not corpus or capital of the trusts but were distributions of previously untaxed income.

The petitioners state that if the decedent had terminated his services with Penn and Garber and had received pension benefits from the respective trusts, such benefits might be classed as additional compensation and taxed to him as income under section 165 (b). However, they take the position that section 165 (b) was not intended to apply to the recipients or distributees of the death benefits here involved. In support of their position the petitioners contend that such distributees made no investment in or contribution to the trusts or rendered any service which produced the sums distributed to them, or with respect to which the distributions were made to them, and that, accordingly, in receiving the distributions, the distributees were merely the recipients of gratuities accorded them by the terms of the trust agreements and as provided by statute. We fail to perceive anything in the foregoing which indicates that section 165 (b) was not intended to apply to the distributees involved herein. In our opinion section 165 (b) was intended to and does apply to distributees situated as were the distributees in the instant cases. As we read section 165 (b) the terms "distributee" and "employee" as used therein were not used synonymously. We find nothing in the section to warrant the construction proposed by the argument of the petitioners, namely, that the section applied only to such a "distributee" as was, or had been, an "employee" and had no application to a "distributee" who was not, or had not been, an "employee." The term "distributee" is used in a sense sufficiently comprehensive to include all who receive distributions from pension trusts qualifying under section 165 (a) irrespective of whether the recipients were, or ever had been, employees of those who established the trusts. Accordingly, we hold that the distributions here involved were taxable to the distributees thereof. Since the total distributions payable with respect to the decedent were paid to the distributees within 1 taxable year of the distributees on account of the decedent's separation from the service

of Penn and Garber, the amounts of the distributions, the decedent having made no contribution to either trust, are to be considered a gain from the sale or exchange of a capital asset held for more than 6 months. Since the distributions were so considered by the respondent in determining the deficiencies here involved, his action is sustained.

Having held for the respondent on the foregoing issue it becomes necessary to consider two other issues. The first of these is whether the petitioners are entitled under section 22 (b) (1) (B) of the Code [5] to exclude from their gross incomes certain portions of the amounts distributed as death benefits by the Penn and the Garber pension trusts.

The petitioners take the position that under section 22 (b) (1) (B), $5,000 of the total death benefits distributed by each of the pension trusts is to be excluded from the gross income of the distributees and that since each of the trusts distributed to each of the three distributees one-third of the total distribution of death benefits made by it, each distributee was entitled to exclude from gross income $1,666.66 with respect to the distribution received from the Penn pension trust and $1,666.66 with respect to the distribution received from the Garber pension trust. In determining the deficiencies the respondent did not allow any exclusions and he takes the position here that the distributees were not entitled to exclude from gross income any amount with respect to the distribution received from either of the trusts.

Section 22 (b) (1) (B), as set out in the margin, represents an amendment made to the Code by section 302 of the Revenue Act of 1951, approved October 20, 1951, and made applicable to taxable years beginning after December 31, 1950. The section was construed in T. D. 6020, approved June 17, 1953, 1953–2 C. B. 106, which amended Regulations 111. Pertinent portions of the regulations as so amended are set out below.[6]

---

[5] SEC. 22. GROSS INCOME.

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

(1) Life insurance, etc.—Amounts received—

\* \* \* \* \* \* \*

(B) under a contract of an employer providing for the payment of such amounts to the beneficiaries of an employee, paid by reason of the death of the employee; whether in a single sum or otherwise (but if such amounts are held by the insurer, or the employer, under an agreement to pay interest thereon, the interest payments shall be included in gross income). The aggregate of the amounts excludible under subparagraph (B) by all the beneficiaries of the employee under all such contracts of any one employer may not exceed $5,000.

[6] SEC. 29.22 (b) (1)–2. DEATH PAYMENT BY EMPLOYER—AMOUNTS PAID BY REASON OF THE DEATH OF AN EMPLOYEE.—Amounts, not in excess of $5,000, paid by an employer in pursuance of an express contract, to the estate or to a beneficiary (individual, partnership, trust, or corporation) of an employee, including a former employee, by reason of the employee's death shall be excluded from the gross income of such beneficiary if received

Pointing to the fact that the decedent had reached retirement age under the Penn pension plan in 1946 and under the Garber pension plan in 1948 and that thereafter and until his death in 1951 he could have elected to receive his pensions or to take 10-year certain and continuous annuities, the respondent contends that the decedent possessed, immediately prior to his death, a nonforfeitable right to receive while living the amounts of the death benefits in question, and that the following portion of Regulations 111, section 29.22 (b) (1)–2 (as added by T. D. 6020), prevents the exclusion by the distributees of any portion of the amounts received by them from the respective pension trusts:

The exclusion does not apply to amounts with respect to which the deceased employee possessed, immediately prior to his death, a nonforfeitable right to receive the amounts while living.

during a taxable year beginning after December 31, 1950. Where such death payments are made by more than one employer, including former employers of the decedent, a $5,000 exclusion applies separately to amounts receivable from each employer or former employer of the decedent. Where the aggregate payments by an employer, under an express contract, to the beneficiaries of the deceased employee exceed $5,000, the $5,000 exclusion shall be proportioned among the beneficiaries in the same proportion as the amount payable to or received by each under such contract bears to the total death payment the employer is contractually obligated to make. It is immaterial whether the proceeds are received in a single sum or otherwise. If, however, the proceeds are held by an employer under an agreement to pay interest thereon, the interest payment must be included in gross income.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Where a payment is made on account of the death of an employee by a welfare fund or a trust, including a pension trust exempt under section 165 (a), in pursuance of an agreement entered into by an employer of the deceased employee, the payment shall be considered to have been made by the employer for the purpose of this section. Any part of a death payment which is attributable to the contributions of the employee shall be disregarded in determining the amount paid by an employer.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

The exclusion from gross income provided by this section is limited solely to those amounts paid by or on behalf of an employer which, by the terms of the contract with the employee or by the provisions of the plan providing for such payments, are specifically designated and intended as a death payment, paid only by reason of the death of the employee. The exclusion does not apply to amounts with respect to which the deceased employee possessed, immediately prior to his death, a nonforfeitable right to receive the amounts while living. See section 29.165–7. Amounts to which the exclusion is not applicable include, among others, such items as uncollected salary, payments for unused leave, and amounts paid by or on behalf of an employer to the survivor of a deceased retired employee as a survivor's annuity &ast; &ast; &ast;

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

*Example* (5). The X Corporation instituted a retirement plan for its employees, the cost thereof being borne entirely by the corporation. The plan provided, in part, as follows: If, after 10 years of service, an employee left the employ of the corporation, either voluntarily or involuntarily, before retirement, a percentage of the reserve provided for the employee in the pension trust fund would be paid the employee as follows: 10 to 15 years of service, 25 percent; 15 to 20 years of service, 50 percent; 20 to 25 years of service, 75 percent; 25 years of service or over, 100 percent. The plan further provided that if an employee died before reaching retirement age, his beneficiary would receive a percentage of the reserve provided for the employee in the retirement fund, on the same basis as shown in the preceding sentence. Y, an employee of the X Corporation for 17 years, died while in the employ of the corporation before retirement. His beneficiary received $7,500, an amount equal to 50 percent of the reserve provided for Y's retirement. No exclusion from gross income may be made by the beneficiary with respect to such payment since Y, prior to his death, had a nonforfeitable right to the payment.

The petitioners contend that so to construe the provisions of section 22 (b) (1) (B) as is done in the foregoing portion of the regulations is to limit or restrict the application of the section in a manner not justified by the provisions of the section itself.

From our consideration of section 22 (b) (1) (B) we find expressed therein only one limitation, namely, that the aggregate of the amounts excludible by all the beneficiaries of the deceased employee under all contracts of any one employer may not exceed $5,000. Since Congress has expressly limited the application of the section in the foregoing respect, we think if it had intended that the applicability of the section should also be limited in other respects, it would have expressly provided so. We agree with the petitioners and hold that the portion of the regulations in question may not be applied to bar the exclusions sought by petitioners.

The remaining issue is whether under section 126 (c) of the Code the petitioners are entitled to deductions of proportional parts of the estate tax of the estate of Eli L. Garber resulting from the inclusion in the gross estate of that estate of the amounts of the distributions made as death benefits which are involved herein. Pertinent portions of section 126 are set out below.[7]

From the provisions of section 126 (c) it is apparent that the deduction for estate tax therein provided is allowable to "[a] person who includes an amount in gross income under subsection (a)" of section 126. Under the provisions of subsection (a) of section 126 the amount to be included in the gross income of persons mentioned in that subsection is—

The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period * * *

---

[7] SEC. 126. INCOME IN RESPECT OF DECEDENTS.

(a) INCLUSION IN GROSS INCOME.—

(1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:

(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or

(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

*       *       *       *       *       *       *

(c) DEDUCTION FOR ESTATE TAX.—

(1) ALLOWANCE OF DEDUCTION.—A person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio to the estate tax attributable to the net value for estate tax purposes of all the items described in subsecion (a) (1), as the value for estate tax purposes of the items of gross income or portions thereof in respect of which such person included the amount in gross income (or the amount included in gross income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a) (1).

But, as pointed out above under the first issue, the distributions made by the pension trusts as death benefits were of income which had been received by the pension trusts which, under section 165 (a), were exempt from taxation. Such being the situation the death benefits received by the distributees cannot be regarded as "items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period." In view of the foregoing we conclude that each of the distributees was not "[a] person who includes an amount in gross income under subsection (a)" of section 126, and not being such a person was not entitled to a deduction for estate tax as provided in section 126 (c).

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

HARRON, *J.*, dissents.

TURNER, *J.*, did not participate in the consideration of or decision in this report.

---

RAUM, *J.*, dissenting: I regret that I am unable to agree with the prevailing opinion on the second and third issues.

With respect to the second issue, the matter is specifically governed by an applicable regulation which should be controlling unless it is plainly in conflict with the statute. I cannot find such conflict, and would therefore follow the regulation.

As to the third issue I think that the prevailing opinion takes an unduly narrow view of the statute. Its purpose is to give some relief where the same item is included in a decedent's gross estate for estate tax purposes and is thereafter also included for income tax purposes in the measure of gross income of the estate or of a beneficiary. That precise situation of double taxation exists here, and it is my view that when fairly read the statute affords the relief which it was plainly intended to provide.

MURDOCK, *J.*, concurs in this dissent insofar as it relates to the second issue.

ATKINS, *J.*, agrees with this dissent.

---

ATKINS, *J.*, dissenting: I dissent from the view of the majority on the second issue. Subsection (B) of section 22 (b) (1), which was enacted by section 302 of the Revenue Act of 1951, applies only to amounts received under a contract of an employer *paid by reason of the death of an employee*. In the Senate Finance Committee Report on the Revenue Act of 1951 (S. Rept. No. 781, 82d Cong., 1st Sess. (1951), p. 50), it is stated:

6. Death benefits to employees

Section 22 (b) (1) of the code excludes from gross income amounts received

under a life-insurance contract paid by reason of the death of the insured. whether in a single sum or otherwise. However, by its terms, this provision is limited to life-insurance payments, and the exclusion does not extend to death benefits paid by an employer by reason of the death of an employee. In order to correct this hardship, section 302 of your committee's bill excludes from gross income death benefits not in excess of $5,000 paid by any one employer with respect to any single employee's beneficiary or beneficiaries in accordance with a preexisting contract. * * *

Thus, the statutory provision in question was intended to apply to true death benefits—that is, payments which the obligor would not be required to pay except for the event of death. Here, under the pension plans, reserves were accumulated and were earmarked to the credit of the deceased employee, and during his life he had a vested interest in such reserves. The trust was obligated to pay out the amount of the reserve to him during his lifetime as he might elect. If at the time of his death he had not received the full benefit of the reserve earmarked for him, the remainder would go to his designated beneficiaries. Thus, the decedent's death would not impose upon the obligor any obligation to pay any greater amount to his beneficiaries. It seems clear that any such payments made to the decedent's beneficiaries should not be considered death benefits or amounts "paid by reason of the death of an employee."

The manner of taxing such payments as these is clearly set forth in section 165 (b), which provides that the amounts actually distributed or made available to any distributee is taxable to such distributee in the same manner as an annuity under section 22 (b) (2), or if received in 1 taxable year, as if received from sale or exchange of a capital asset held for more than 6 months. This is not to say that there may not be payments made by a qualified pension trust of a character which come within the provisions of section 22 (b) (1) (B). Indeed, section 29.22 (b) (1)–2 of Regulations 111, quoted in the majority Opinion, recognizes that this may be possible. But such regulations properly provide, in accord with the statute, that payments such as are here involved are not death benefits and do not come within the ambit of section 22 (b) (1) (B). It is my view that the petitioners are not entitled to any exclusions under that section.

I also am of the opinion that, within the intendment of section 126 (a), the petitioners did acquire by reason of the death of the decedent, the right to receive items of gross income in respect of the decedent, and that they are entitled to the allowance for estate tax paid, pursuant to section 126 (c). The purpose of section 126 (c) is to give some relief, for income tax purposes, to one who is required to include in gross income an item which has been subjected to estate tax. I accordingly dissent from the holding of the majority on the third issue.

HARRON, *J.*, agrees with this dissent.