271 F.2d 104
 H. Lloyd HESS and Erla M. G. Hess, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
ESTATE of Bernice GARBER, Deceased, J. Perry Garber, Executor; and Estate of J. Perry Garber, Deceased, John F. Garber, Executor, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Frank P. HECKEL and Mary G. Heckel, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
E. Lloyd HESS and Erla M. G. Hess, Respondents.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
ESTATE of Bernice GARBER, Deceased, J. Perry Garber, Executor; and Estate of J. Perry Garber, Deceased, John F. Garber, Executor, Respondents.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
Frank P. HECKEL and Mary G. Heckel, Respondents.
 Nos. 12839-12841.
 Nos. 12871-12873.
 United States Court of Appeals Third Circuit.
 Argued June 2, 1959.
 Decided October 16, 1959.
 
 Richard S. Doyle, Washington, D. C. (Jules G. Körner, III, Washington, D. C., Blair, Korner, Doyle & Worth, Washington, D. C., on the brief), for taxpayers.
 Kenneth E. Levin, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attorneys, Department of Justice, Washington, D. C., on the brief), for Commissioner.
 Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.
 BIGGS, Chief Judge.
 
 
 1
 The issues presented arise out of the death benefits paid to the taxpayers, children of Eli Garber and the estate of one of them, pursuant to the provisions of pension plans inaugurated and carried into effect by Penn Dairies, Inc. and Garber Ice Cream Company. See Estate of Garber v. Commissioner of Internal Revenue, decided contemporaneously with the cases at bar, 3 Cir., 1959, 271 F.2d 97. The taxpayers sued in the Tax Court for redetermination of their income tax liability for the year 1951.
 
 
 2
 The Tax Court had three issues before it: First, are the lump sum payments received by the taxpayers specifically taxable to them as income under Section 165(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 165(b)? Second, do the taxpayers qualify for the $5,000 exclusion provided for by Section 22(b) (1) (B) of the 1939 Code, 26 U.S.C.A. § 22(b) (1) (B)? Third, should the taxpayers be allowed a deduction under Section 126(c) of the 1939 Code, 26 U.S.C.A. § 126(c)? The court answered the first two questions in the affirmative and the last in the negative. 1958, 31 T.C. 165.
 
 
 3
 Petitions for review of the decisions on these issues were filed by the taxpayers' beneficiaries or by the Commissioner as indicated hereinafter.
 
 
 4
 The first issue presented does not require extended discussion. We have considered and weighed carefully the arguments of the taxpayers and of the Commissioner and have examined the records. We are of the opinion that the decision of the Tax Court must be affirmed on this issue.
 
 
 5
 The second and third issues raised require discussion. The second concerns the validity of that part of Treasury Regulations 111, Section 29.22 (b) (1)-2[1][2] as follows: "The exclusion does not apply to amounts with respect to which the deceased employee possessed, immediately prior to his death, a non-forfeitable right to receive the amounts while living." The Tax Court, with four judges dissenting, held the Regulation invalid as not conforming to Section 22(b) (1) (B) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 22(b) (1) (B), the portion of the tax code the Regulation purported to interpret.
 
 
 6
 Section 22(b) (1) (B) provides that amounts up to $5,000 of funds received "under a contract of an employer providing for the payment of [specified] amounts to the beneficiaries of an employee, paid by reason of the death of the employee" shall not be included in gross income. The Commissioner contends that the phrase "paid by reason of the death of the employee" does not refer to the time when the employee died but to the source of the payments: that is to say, in order to benefit by the exemption the fund which the beneficiary receives must be created by the employee's death: that otherwise, the exemption is unavailable. Here, the Commissioner asserts that the employee, Garber, already possessed a non-forfeitable right to enjoy the funds the beneficiaries received ultimately: that Garber's death did nothing more than cause funds, already in existence, to be transferred, his death not creating the funds. In other words, the Commissioner argues that the obligations to pay Garber's beneficiaries did not come into being by reason of his death but matured by reason of his age and length of service under the Penn and Garber Company pension plans. See 1958, 31 T.C. 165.
 
 
 7
 Since the decedent-employee, Garber, unquestionably enjoyed non-forfeitable rights to receive pension benefits while he was living, the only question remaining is the validity of the Treasury Regulation referred to above.[3] Conceding, as we must, that a Treasury Regulation must be sustained unless it is unreasonable and plainly inconsistent with the revenue statute which it purports to interpret and that it should not be held for nought except for "weighty reasons", Commissioner v. South Texas Lumber Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831, the question to be decided here is whether there are sufficient grounds to hold that the pertinent portion of the Regulation is not a proper interpretation of the congressional purpose.
 
 
 8
 The legislative history of the pertinent Revenue Codes and Acts and of the Regulation is helpful. According to the Senate Committee Reports Section 22(b) (1) (B) was enacted into law by Section 302(a) of the Internal Revenue Act of 1951, 65 Stat. 483, in order to correct an injustice that arose from the fact that proceeds from life insurance policies under which an employer had insured an employee were nontaxable, while other similar death benefits were taxable.[4] These reports show that it was the purpose of the 1951 amendment to put death benefits, including employee pension plan death benefits, on a parity with insurance policy benefits of the kind indicated below. It was the manifest intention of Congress, even where no formal insurance policy had been issued, to avoid discrimination in respect to the taxability of death benefits. Benefits similar to those derived from life insurance policies were of the kind which Congress intended to be aided by the exemption of 22(b) (1) (B). It is obvious that proceeds of a life insurance policy of the type previously covered by Section 22(b) (1) arise only by reason of the death of the employee and that the employee has no right to possession of any part of the fund created pursuant to the terms of the policy.
 
 
 9
 The House and Senate Reports accompanying the Internal Revenue Act of 1954 afford a further clue to the meaning of section 22(b)(1)(B).[5] Both reports recognized the existence of Regulations 111 and its apparent validity but took the position that the law should be altered and the privilege of exclusion should be extended to cases of qualified trusts,[6] even though substantial rights capable of being reduced to possession by the employee had vested in him prior to death.[7] It should also be pointed out that Section 101(b)(2)(B), 26 U.S.C.A. § 101(b) (2) (B), adopts the substance of the language of the Regulation[8] under the heading "Non-forfeitable rights". The section provides that the exemption shall not apply to payment of amounts in respect to which the employee immediately before his death had a non-forfeitable right while living and then proceeds to carve out an exception, inter alia, in favor of pension plan benefits of the sort created in Garber's favor under the Penn and Garber Company pension plans.
 
 
 10
 In the light of the foregoing legislative history we are of the opinion that the Regulation is reasonable and is not inconsistent with the revenue statute which it purports to interpret but correctly expresses its intent. We conclude therefore that the minority Judges of the Tax Court correctly reached a conclusion favoring the Commissioner and that the majority of that Court was in error. We hold that the taxpayers are not entitled to the $5,000 exemption provided by Section 22(b)(1)(B) of the 1939 Code.
 
 
 11
 The third issue is: Should the taxpayers be allowed a deduction under Section 126(c) of the 1939 Code, 26 U.S. C.A. § 126(c)? This point was decided against the taxpayers and in favor of the Commissioner by the Tax Court, three Judges dissenting. On the first issue ruled on in this opinion we held that the sums received by the taxpayers from the pension plans were taxable to them under Section 165(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 165(b). The purpose of Section 126(c) is to avoid the injustice which would ensue from attributing to another under Section 126(a) income due the decedent, and also imposing an estate tax on the same income unreduced by the amount of income tax due and owing under Section 126(a).[9][10] It would appear from the language of Section 126(a) that death benefits of the type involved here are covered by Section 126(a). The Commissioner contends, however, that Section 126 was designed to alleviate the hardships created by Section 42 of the 1934 Act and the 1939 Code.[11] Under Section 42 a decedent's estate was subject to income tax for all income accrued to the date of death even though he was on a cash basis. This often resulted in "bunching" so that a decedent's estate was subject to a higher rate of income taxation than would have been the case had he lived and received the income in normal course. Section 126, therefore, provided that the recipient of the income rather than the estate be taxed by way of income tax. The income would have the same character in the hands of the recipient as it would have had in the hands of the decedent had he lived. Therefore, argues the Commissioner, Section 126 only covers items originally taxable under Section 42, but the pension benefits in the cases at bar are taxable under Section 165 so that the relief afforded by Section 126 must be deemed to be inapplicable.
 
 
 12
 We cannot agree with the Commissioner's conclusions. There are a number of cases and administrative rulings holding that income of the sort involved here is includible within the ambit of Section 126(a).[12] Moreover there is a ruling of the Internal Revenue Department which seems to hold that the deduction provided by Section 126(c) of the 1939 Code is applicable to payments received by a beneficiary of a deceased participant of a pension or profit sharing plan meeting the requirements of Section 165(a).[13]
 
 
 13
 Next, the Commissioner contends that the legislative history of Section 126 supports his view that only income originally taxable by Section 42 is to be given the benefits of Section 126 but in our opinion the Senate Finance Committee Report to which the Commissioner refers contains little, if any, language which supports his position.[14]
 
 
 14
 Next, while it must be conceded that Section 165 does deal with funds arising from pension plans such as those created by Penn and Garber Company, the section does not purport to be the exclusive source of taxation of annuity or pension plan benefits and does not purport to exclude taxability of such benefits under Section 126. Section 165 merely imposes conditions under which qualified trusts for the benefit of employees are operable and gives rules relating to taxability of payments from employees' pension plan funds.
 
 
 15
 Last, we are of the opinion that since Section 126(c) shows a broad congressional intent to avoid double taxation in situations substantially similar to those at bar, we would be doing violence to the spirit of the section by straining to create distinctions which, at best, are very technical in nature.
 
 
 16
 It follows, therefore, that the taxpayers should be permitted the deductions allowed by Section 126(c) of the Internal Revenue Code of 1939 and that the decisions of the Tax Court in this respect must be reversed.
 
 
 17
 The cases will be remanded to the Tax Court with the direction to re-determine the tax liability of the petitioners in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939, as added by T.D. 6020, 1953-2 Cum. Bull. 106
 
 
 [2]
 All Regulations in Part 29 (Regulations 111) have been superseded by Part 39 insofar as they may relate to income taxes for taxable years beginning after December 31, 1951. Section 39.22(b) (1)-2, however, is identical to Section 29.22(b) (1)-2
 
 
 [3]
 See our opinion in Estate of Garber v. Commissioner, 3 Cir., 1959, 271 F.2d 97
 
 
 [4]
 Report of the Senate Committee on Finance to accompany H.R. 4473 (Internal Revenue Act of 1951), Rep. No. 781, 82d Cong., 1st Sess. p. 50, U.S.Code Congressional and Administrative Service 1951, p. 1969; Supplementary Report of the Senate Finance Committee, Rep. No. 781, 82d Cong., 1st Sess. p. 16
 
 
 [5]
 House Report 1337, 83d Cong., 2d Sess. p. 14, and Senate Report 1622, 83d Cong., 2d Sess. p. 14, U.S.Code Congressional and Administrative News, 1954, p. 4025
 
 
 [6]
 That is to say, pension benefit plans or trusts qualifying under Section 165 of the Internal Revenue Code of 1939
 
 
 [7]
 The resulting provision of the 1954 Code is Section 101(b) (2) (B), 26 U.S.C.A. § 101 (b) (2) (B)
 
 
 [8]
 See note 1 and accompanying text, supra
 
 
 [9]
 If the decedent had actually received this income before his death he would, of course, be liable for income tax thereon. However, the estate tax would only be imposed on the amount of income left after paying the income tax. The result of Section 126(c) is to place a recipient of income due the decedent in the same position tax-wise that he would have occupied if the decedent had lived to receive the income
 
 
 [10]
 Other federal income statutes may be involved but it is not necessary for the purposes of this opinion to discuss them here
 
 
 [11]
 See 48 Stat. 694
 
 
 [12]
 I.T. 3744, 1945 Cum.Bull. 192 held that payments from a civil service pension fund to an employee's estate, that represented benefits above and beyond the employee's own contributions were subject to income tax under Section 126(a) of the Internal Revenue Code of 1939. In Higgs v. Commissioner, 1951, 16 T.C. 16, a widow who received the remainder of her husband's pension benefits claimed a deduction under Section 126(c) of the 1939 Code. The Tax Court rejected this contention because the pension benefits were never subject to estate tax, but there is indication in the opinion that if her husband's estate had been subject to estate tax on these benefits Section 126(c) would have been applicable
 
 
 [13]
 Reg. 118, Section 39.126(c) (1), Rev. Ruling 54-601, 1954-2 Cum.Bull. 197 holds that the deduction provided by Section 126(c) of the 1939 Code applies to payments received by a beneficiary of a deceased participant under a pension or profit-sharing plan meeting the requirements of Section 165(a) of the 1939 Code, where such payments constitute "income in respect of a decedent" under Section 126(a). Payments are income in respect of a decedent when they represent amounts which would have been received by the decedent had he lived. Payments under a joint and survivorship annuity do not merit a deduction under 126 (c). The pension at bar clearly is not a joint and survivorship annuity so it would seem that if this Regulation means anything it means that the death benefits received by petitioners are included within Section 126(c)
 
 
 [14]
 Senate Report No. 1631, 77th Cong., 2d Sess., pp. 100, 102, 1942-2 Cum.Bull. 504, 580, 581