Hazel W. Pollnow, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 82182.    Filed January 31, 1961.

*Don O. Russell, Esq.*, and *William A. Ens, Esq.*, for the petitioner.
*Merrill R. Talpers, Esq.*, for the respondent.

#### OPINION.

Black, *Judge:* The Commissioner has determined deficiencies in petitioner's income tax for the years 1954, 1955, and 1956, in the respective amounts of $156.04, $197.63, and $294.26.  The deficiency for 1954 is due to one adjustment made by the Commissioner to the taxable income reported by petitioner on her return.  That adjustment is explained in the deficiency notice as follows:

> (a) On your income tax return for the taxable year 1954, you reported the sum of $829.60, as income from Great-West Life Assurance Company.  You received the sum of $1,329.60 from this source; therefore, your taxable income is increased in the amount of $500.00.

The deficiency for 1955 is due to the same type adjustment and is explained in a similar manner as the one for 1954.  The deficiency for 1956 is due to an addition of $1,137.47 to the net income reported by petitioner on her return.  This adjustment is explained in the deficiency notice as follows:

> (a) On your income tax return for the taxable year 1956, you reported the sum of $192.13, as income from Great-West Life Assurance Company.  You received the sum of $1,329.60 from this source; therefore, your taxable income is increased in the amount of $1,137.47.

The petitioner by appropriate assignments of error contests the correctness of the adjustments which the Commissioner has made in each of the taxable years.

The facts have all been stipulated and the stipulation of facts, together with exhibits attached thereto, is incorporated herein by this

reference. For the purpose of making clear the issue to be decided, we summarize the facts as follows:

Petitioner, Hazel W. Pollnow, is a widow residing in St. Louis, Missouri. The income tax return for each of the taxable years involved was filed with the district director of internal revenue at St. Louis.

Petitioner's husband, Charles F. Pollnow, sometimes hereafter referred to as Charles, died in August 1953. At the time of his death he was an employee of Vestal Laboratories, Inc. (previous name Vestal Chemical Co. and hereafter referred to as Vestal), had not reached the age of 65, and was not retired.

Vestal has a qualified pension plan established by a meeting of its board of directors on December 16, 1941. Prior to Charles' death, the pension plan had been amended three times by board of directors meetings on December 16, 1942, November 21, 1944, and October 26, 1950. In general, the plan as amended, provides for the payment of annual retirement benefits based upon a percentage of the average compensation received by an employee-participant during a specified period of his coverage under the plan. The normal retirement age for the receipt of retirement income is the anniversary of the policy nearest the employee's 65th birthday.

The retirement benefits are funded through the media of annual premium deferred annuity policies, the cost of which is borne solely by the company. The trustee under the pension plan selected the annuity policies offered by the Great-West Life Assurance Company.

The pension plan is administered by an advisory board appointed by the board of directors of Vestal. The legal title to the annuity policies and all contributions made by Vestal are held in the name of a trustee pursuant to the terms of a trust established under the plan.

Under the pension plan as amended, retirement income was payable although employment was discontinued voluntarily or involuntarily prior to normal retirement age, and subject to certain exceptions referred to in the succeeding paragraph, the terminating participant's interest, i.e., his vested interest to the annuity policies held on his life would be based upon the number of years the employee had been a participant under the plan. A terminating employee who had been a participant for less than 2 years had no vested interest in the policies held on his life. A participant whose termination of service occurred after 2 years would receive a vested interest equal to 10 percent per year for the number of full years of participation. Completion of 10 or more years of participation under the plan resulted in the employee's having a full vested interest to the annuity policies held on his life.

The exceptions mentioned in the preceding paragraph, which would bar an employee-participant from receiving a percentage or all (as

the case may be) of an interest in the annuity policies held on his life, relate to discharge from the employ of Vestal because of conduct constituting a misdemeanor or felony under the laws of the State of Missouri, conviction of a felony or misdemeanor involving moral turpitude, or for willful disloyalty to Vestal. In the event of the death of a participant prior to the time the retirement income becomes payable, the entire proceeds of the annuity policies purchased on the employee's life become payable to the person or persons designated by the employee.

At the time of his death Charles had been an employee-participant under the pension plan since its inception on December 16, 1941, and at the time of his death (1953) had the annuity policies fully vested in him. Pursuant to said plan, Charles, prior to his death, executed a "Form of Request and Direction" which provided that the death benefit value under the annual premium retirement annuity policies will be paid to petitioner each year for 10 years. At the time of Charles' death the annual premium retirement annuity policies had a death benefit value provided in table G of the annuity policy of $13,296. In accordance with the form of request and direction filed by Charles, the sum of $1,329.60 was paid and is being paid to petitioner each year for 10 years, beginning in 1954.

In this case it is petitioner's contention that the sum of $13,296 paid to her by the Great-West Life Assurance Company in amounts of $1,329.60 annually over a period of 10 years was paid to her as a death benefit by the insurance company on behalf of the deceased husband's employer, pursuant to a plan and as such, petitioner is entitled to exclude from gross income the sum of $5,000, applied $500 per year over the 10 years required to pay the full amount.

On the other hand, it is respondent's contention that the payments made to petitioner during the taxable years 1954, 1955, and 1956 by Vestal pension trust were not paid by reason of the death of Charles within the meaning of the applicable statute and regulations so as to allow petitioner the benefits of a $5,000 exclusion allocated over the 10-year period of payments.

It is agreed by the parties that although the taxable years involved here begin with 1954 and ordinarily would fall within the provisions of the 1954 Code, because Charles died in August 1953, the provisions of the 1939 Code, as amended, are applicable to the issue we have here to decide. The applicable section of the statute is section 22 which reads:

SEC. 22. GROSS INCOME.

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

(1) LIFE INSURANCE, ETC.—Amounts received—

(A) under a life insurance contract, paid by reason of the death of the insured; or

(B) under a contract of an employer providing for the payment of such amounts to the beneficiaries of an employee, paid by reason of the death of the employee;

whether in a single sum or otherwise (but if such amounts are held by the insurer, or the employer, under an agreement to pay interest thereon, the interest payments shall be included in gross income). The aggregate of the amounts excludible under subparagraph (B) by all the beneficiaries of the employee under all such contracts of any one employer may not exceed $5,000.

It seems to us that the exclusion of $5,000 must be allowed to petitioner under the provisions of section 22(b)(1)(B) above quoted unless Charles possessed immediately prior to his death a nonforfeitable right to receive the $13,296 in question while living. Section 39.22 (b)(1)–2(d)(1) of Regulations 118 states, in part, as follows:

The exclusion from gross income provided by this section is limited solely to those amounts paid by or on behalf of an employer which, by the terms of the contract with the employee or by the provisions of the plan providing for such payments, are specifically designated and intended as a death payment, paid only by reason of the death of the employee. The exclusion does not apply to amounts with respect to which the deceased employee possessed, immediately prior to his death, a nonforfeitable right to receive the amounts while living. See § 39.165–7. * * *

Section 39.165–7(a) provides, among other things, as follows:

An employee's benefical interest in the contribution is nonforfeitable within the meaning of sections 165(c) and 23(p)(1)(D) at the time the contribution is made if there is no contingency under the plan which may cause the employee to lose his rights in the contribution. For example, if under the terms of a pension, an employee upon termination of his services prior to the retirement date, whether voluntarily or involuntarily, is entitled to a deferred annuity contract to be purchased with the employer's contribution made on his behalf, or is entitled to annuity payments which the trustee is obligated to make under the terms of the trust instrument based on contributions made by the employer on his behalf, the employee's beneficial interest in such contributions is nonforfeitable. * * *

The pension plan in question contains a provision which reads as follows:

Should any employee be discharged from the employ of the Company because of conduct constituting a misdemeanor or felony under the laws of the State of Missouri, or be convicted of a felony or misdemeanor involving moral turpitude, or for wilful disloyalty to the Company, such employee shall forfeit his right to receive any distribution whatsoever from the Trustee. * * *

It seems to us that because of the foregoing provision of the plan at the time of the death of Charles, he did not possess a nonforfeitable right to receive the $13,296 in question while he was living. It was possible under the language just quoted for him to have forfeited his rights to the $13,296 in question and never to receive it. Both parties

cite and comment upon *Hess* v. *Commissioner*, 271 F. 2d 104, reversing 31 T.C. 165. Respondent relies upon the opinion of the Third Circuit in reversing the Tax Court and holding that the regulations in question were valid. Respondent argues that immediately prior to his death, Charles possessed a nonforfeitable right to receive the amounts later paid to petitioner. Therefore, says respondent, the regulations are controlling and petitioner is not entitled to the $5,000 exclusion which she claims.

With respect to *Hess* v. *Commissioner, supra*, petitioner contends that that case decides only one thing pertinent to the instant case and that one thing is that the regulations in question were valid and not invalid as the majority opinion of the Tax Court had held. Petitioner says that not only does she not contest the validity of the regulations but relies upon them to support her claim for the $5,000 exclusion. Petitioner argues that these regulations state that an employee's interest is nonforfeitable only if there is no contingency under the plan which may cause the employee to lose his rights in the contribution. Petitioner argues that, unlike the *Hess* case, her position is based upon the contingencies set forth in the plan, not the invalidity of the Commissioner's regulations. Petitioner points out that the pension plan involved in the instant case contained three contingencies which could have caused Charles' rights to be forfeited: A discharge by the company for (1) conduct constituting a misdemeanor or felony under the laws of the State of Missouri, (2) conviction of a felony or misdemeanor involving moral turpitude, and (3) willful disloyalty to the company. Charles remained employed until the time of his death and as long as he remained so employed a possibility existed that something would occur to bring the above provisions into play, causing a forfeiture of his rights.

It seems to us that petitioner is correct in this contention. With such provisions as the above in the pension plan, we do not see how it can be held that at the time of Charles' death he possessed a nonforfeitable right to the $13,296 in question. With respect to this issue we hold for petitioner.

In the last taxable year, 1956, $1,137.47 was excluded from gross income on the theory that petitioner had a basis in the annuity policy equal to the fair market value thereof at the time of Charles' death. Petitioner argues nothing about this point in her brief and apparently such contention has been abandoned. At any rate, there is nothing in the record which would justify us in sustaining such a contention and it is denied. The exclusion to be granted petitioner under our holding herein is $500 for the year 1956, the same as is to be granted for the years 1954 and 1955.

*Decision will be entered under Rule 50.*