LIBERTY MACHINE WORKS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3532–71.   Filed August 19, 1974.

*Urban C. Bergbauer, Jr.*, and *James C. Thompson*, for the petitioner.
*Ted M. Riseling*, for the respondent.

GOFFE, *Judge:* The Commissioner determined deficiencies in petitioner's Federal income taxes for the taxable years ended March 31, 1968, and March 31, 1969, in the respective amounts of $6,225.15 and $7,031.38. The sole issue for decision is whether petitioner's contributions to a trust for its profit-sharing plan were deductible under section 404(a)(3) or 404(a)(4) of the Internal Revenue Code of 1954.[1]

### FINDINGS OF FACT

Some of the facts are stipulated. The stipulation of facts and exhibits are incorporated by reference.

Petitioner is a Missouri corporation which was incorporated in 1947. It is a specialized service contract machine shop which designs, engineers, and manufactures tools and dies for manufacturing businesses in St. Louis. Its principal place of business is St. Louis, Mo., and its Federal income tax returns for the taxable years involved were filed with the district director of internal revenue at St. Louis, Mo., utilizing the accrual method of accounting.

Petitioner entered into a collective bargaining agreement with district No. 9, International Association of Machinists and Aerospace Workers, on August 7, 1967. Its plant employees had been represented by that union since 1941. The agreement required petitioner to contribute $17.35 monthly for each covered employee to the I.A.M. Pension Trust which administered the union's pension plan, and petitioner did in fact make such payments during its taxable years ended March 31, 1968, and March 31, 1969, in the respective amounts of $21,234.80 and $19,907.55. Only the plant employees of petitioner, numbering 84 in the taxable year ending in 1968 and 74 in 1969, were covered by the union contract. The plant employees included tool and die makers, toolroom machinists, journeymen machinists, apprentices, specialists,

---

[1] All section references are to the provisions of the Internal Revenue Code of 1954 in effect during the taxable years in issue.

machinists' helpers, and all other production and maintenance employees of the company. Supervisors, professional employees, office workers, clerks, and guards were not represented by the union.

The pertinent portions of the pension plan are as follows:

### NORMAL RETIREMENT AGE

The normal retirement date for each participant shall be the first day of the month coincident with or immediately following his attained age sixty-five, or six months after first participating in the plan, whichever occurs the latest.

### NORMAL RETIREMENT BENEFITS

The amount of retirement benefits to be provided each participant at normal retirement date, who shall attain normal retirement date on and after January 1, 1969, shall be computed as follows:

### ACCREDITED FUTURE SERVICE

| Amount of employers' monthly contribution | Amount of future service monthly pension benefits provided by each year of future service participation |
|---|---|
| $17.35 | $5 |

\*        \*        \*        \*        \*        \*        \*

### PLUS

### ACCREDITED PAST SERVICE

$2 . per month for each completed year of accredited past service prior to d .iv or , rticipation.

### PLUS

### SOCIAL SECURITY RETIREMENT BENEFITS

District No. 9 I.A. of M. Pension Trust Retirement Benefits are in addition to your Social Security Retirement Benefits.

### HOW TO FIGURE NORMAL RETIREMENT BENEFITS

To compute the benefit at Normal Retirement date, simply multiply, *Future Service and Past Service* credits by the accredited years.

An Example:
1. You retire at age 65
2. 20 years of *Future Service*
3. 10 years of *Past Service*

Your amount of Pension would be computed according to your Employer's Contribution as follows:

| Employer monthly contributions | Future service monthly pension credits | Past service monthly pension credits | Total monthly pension |
|---|---|---|---|
| $17. 35 | $100 | $20 | $120 |

\*        \*        \*        \*        \*        \*        \*

## MINIMUM PENSION BENEFITS

If your Normal Retirement Benefit is less than the following Minimum Pension, you will be entitled to the *larger of the two.*

A minimum monthly pension will be provided a participant who has attained the normal retirement date after completing at least twenty years of accredited past and future service combined. If the total number of accredited years shall be less than twenty years, the minimum pension shall be prorated in the ratio that the number of years of completed accredited service bears to twenty years. (If a participant had accumulated 18 years of accredited service, then the pension would be 18/20 or 90% of the minimum pension). The * * * amount of a minimum pension [is $100] assuming at least twenty years of accredited service.

    *       *       *       *       *       *       *

## EARLY RETIREMENT BENEFIT

A participant is eligible for an early retirement benefit if he meets the following requirements:

1. He has attained the age of 60.
2. He has participated in the plan for a minimum of six months.
3. He has accumulated a minimum of 15 years of accredited service, both past and future service combined.

The early retirement benefit will be calculated in the same manner as the normal retirement benefit, except, years of accredited service count only until *early* retirement date. After determining the amount of earned pension credits at early retirement date, this amount is further reduced by $\frac{1}{2}$ of 1% per month or 6% per year prior to normal retirement date.

    *       *       *       *       *       *       *

## NORMAL SOCIAL SECURITY RETIREMENT BENEFITS

In addition to your District No. 9 pension benefits, you also can qualify for Social Security Retirement Benefits at age 65 if you meet their requirements of a *"Fully Insured Status"*. Maximum Benefits would be as follows.

| | Maximum social security retirement benefits | |
| --- | --- | --- |
| *If born in year* | *Single worker* | *Married worker with wife same age* |
| 1905 | $171 | $256 |
| 1910 | 180 | 270 |
| 1915 | 188 | 281 |
| 1920 | 192 | 288 |
| 1925 | 195 | 293 |
| 1930 | 201 | 302 |
| 1935 | 209 | 314 |
| 1940 or after | 218 | 323 |

    *       *       *       *       *       *       *

## DISABILITY BENEFITS

A. Eligibility: If you become totally and permanently disabled as defined herein after you have been an active participant for five or more years, then upon proof of such disability you shall be entitled to receive monthly disability benefits.

If you are age 50 or over at the time you become disabled, benefits will commence six months after you become totally and permanently disabled, and will continue until early or normal pension payments commence, or until you recover from total disability.

B. Amount of Benefits : Upon qualifying for disability benefits, you will receive $50.00 per month until retirement benefits commence.

### DEATH BENEFITS

A. Before retirement: If you die prior to retirement, before you have participated under the Plan for at least three years, there will be no death benefits payable to your beneficiary under the plan. If you die after having participated under the plan for three or more years, there will be a death benefit payable of $100.00 for each year of participation, provided one or more employers shall have made monthly contributions for at least nine months during each year. In no case, however, will the death benefit payable before retirement exceed $1,500.00.

B. After retirement: If you die after your retirement date but before you have received 60 monthly payments, your beneficiary will receive the remaining guaranteed payments.

### VESTING

If you terminate your participation after you have completed ten years of *future* accredited service, you will retain the credit for past and future service completed before your date of termination. You will be eligible to retire on the basis of your accredited service when you reach normal retirement age, or if death occurs before you are eligible to receive retirement benefits, your beneficiary will be entitled to receive the lump sum death benefits accumulated prior to your termination of employment.

If you terminate your participation before you have completed ten years of future accredited service you will lose all accredited benefit for purposes of this Plan unless, within two years from this termination, you once again are employed by a contributing employer within a unit of which District No. 9, I.A. of M. and A.W. is the bargaining representative; and provided further that you continue to work for one or more contributing employers for a period of at least three consecutive months. In this case, you shall be entitled to be considered as a participant continuously commencing with the date you first participated in the Plan. However, you will not receive Pension Benefits during this period wherein no employers contributed in your behalf.

However, should you, having worked at least 9 months in the preceding 12 month period for one or more contributing employers, cease to be a participant within five years of your attaining normal retirement date, you shall be entitled to have all previous benefits vested in you, and to receive retirement benefits in the amount that you had earned prior to terminating your participation upon your attaining normal retirement date regardless of the number of years you had been a participant in the Plan.

In the event that your termination of participation is caused by total and permanent disability but prior to the time and date that you shall be entitled to disability benefits, even though participation shall have existed for less than ten years, you shall be entitled to receive from the TRUSTEES a certificate of paid up retirement benefits based on the amount of retirement benefits earned (past service and future service combined) from date of participation to date of termination of participation caused by total and permanent disability. Such paid up certificate shall provide retirement benefits at what would have been your

normal retirement age had you survived to normal retirement age, and on the same basis as if you had continuously been a participant.

The provisions for a "Minimum Pension" do not apply to any participant who terminated participation prior to normal retirement date.

*      *      *      *      *      *      *

### ACCREDITED FUTURE SERVICE

A year of accredited future service will be credited a participant for each full year of future service after date of participation, or after date the participant first commenced work for a participating EMPLOYER, whichever occurs the earliest, and provided further, that such participant remains a member in continuous good standing of DISTRICT NO. 9 or any of its affiliated locals or is an employee of DISTRICT NO. 9, Union or shall work in a unit for which DISTRICT NO. 9, I.A. of M. and A.W. is the bargaining representative, provided further that during each such future year of accredited service, one or more contributing EMPLOYERS shall have made the required contribution on behalf of such participant for a period of not less than nine (9) months in such future year of accredited service. Should one or more contributing EMPLOYERS contribute the required monthly contribution on behalf of such participant for less than nine (9) months in any accredited year of future service, the participant shall be credited with one-fourth of a year of future service for each three (3) month period in which one or more contributing EMPLOYERS contribute the required amount on behalf of such participant, not necessarily continuously, and the participant is otherwise eligible.

### ACCREDITED PAST SERVICE

In determining accredited past service, each Participant shall be credited with a year of past service for each full year of continuous membership in the Union, or each full year of continuous employment with an Employer who employs employees in a unit represented by the Union, prior to the date he becomes a Participant in this Trust.

In the instance of an employee of the Union, he shall be given credit for a year of past service for each full year of continuous membership or employment within the Union, or with an Employer who employs employees in a unit represented by the Union, prior to the date he becomes a Participant in this Trust.

On February 6, 1968, petitioner adopted a profit-sharing plan and trust. The pertinent portions of the profit-sharing plan are as follows:

### ARTICLE II

*      *      *      *      *      *      *

The Trustees shall allocate annually sums set aside by the Company as hereinafter provided to the respective accounts of such of the full time clerical and salaried employees of the Company (including officers and supervisory employees) and being paid either a weekly and/or monthly salary, commission, yearly bonus etc., as shall have been employed by the Company for at least two years and are age 25 but not over age 65 years on February 6, 1968 or any anniversary thereof, and until allocated such sums shall be held in an account to be known as the "Suspense Account." The Company shall deliver to the Trustees a certified list of such employees. Such allocation shall be made proportionately on the basis of the total compensation received during the year ending March 31, 1968 and

each year thereafter and shall include commissions, bonuses, overtime pay and premiums, credits on benefits under this Trust, and other contingent compensation. Such allocation shall be based on the following formula :

Each $100 or fraction thereof, of total compensation shall equal one pay point.

The total points of all members when added together shall be divided into the contributions of the Company to the fund for that particular year, to determine the dollar value of each contribution unit. The total of each member's points times the dollar value of the contribution unit will determine the total dollar value of the employee's share in the Company's contribution for that year. At the same time the principal of the trust fund shall be valued and a determination made of the accruals for the year for which the above contribution is made, which shall consist of any earnings from the fund, any increase in the fair market value, forfeiture and other accretions, of any, less losses, decreases in the fair market value, expenses, and other proper deductions. These net accruals shall be allocated to each member on the basis of the percentage that the dollar amount of his interest, prior to the allocation of the current year's contribution, is to the total dollar amount of the interest of all participants, prior to the allocation of the current year's contribution.

The total interest of each member in the fund shall be the sum of his share in the principal of the trust fund as recomputed annually, which includes earnings on the fund, and his share of the annual contribution of the Company.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

## ARTICLE III

1. As the initial contribution into the trust out of its net income for the fiscal year ending March 31, 1968, the Company shall pay to the Trustees a minimum sum equal to fifteen (15%) per cent of the aggregate compensation actually paid to all eligible employees for the fiscal year ended March 31, 1968. The initial contribution shall be paid before filing the Company's income tax return for the fiscal year ended March 31, 1968.

2. Hereafter, annually and within the time prescribed for filing its Federal Corporation income tax returns or any extensions thereof, the Company shall make a minimum contribution up to five (5%) per cent of its net income earned and shown for the taxable fiscal year or a greater amount as determined by the Board of Directors. However, the amount so contributed in any taxable fiscal year shall not exceed fifteen (15%) per cent of the aggregate compensation actually paid or accrued by the Company to or for the benefit of all eligible or participating employees during the period involved for services rendered—which compensation shall include all the basic salary, wages, bonuses, commissions, etc.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

## ARTICLE V

### VESTING OF INTEREST OF EMPLOYEES IN FUND

1. In the event of termination of employment other than retirement, death or permanent disability of any member who has completed one year of participation under the plan, such participant shall be paid by the Trustees in a lump sum totaling ten per cent (10%) of the vested amount then credited to his individual account, on the last day of the fiscal year ended next previous to the termination of his employment attributable to the company's contributions for each full fiscal year of the plan, during which he was a participant. Upon completion of ten (10) years of membership under the plan, the entire proportionate interest of a member shall become vested, but shall be payable to him or his designated beneficiary

or estate only as hereinafter provided, except that the proportionate interest of any member or ex-member who shall be discharged by the company for dishonesty, or any other act which causes the company monetary loss, or for disclosure of trade secrets, or for entering the service of a competitor after retirement, shall be forfeited and such interest shall be used to reduce the Company's contribution in subsequent years.

 ✸  ✸  ✸  ✸  ✸  ✸  ✸

ARTICLE VI

5. The proportionate interest of each member shall become payable within sixty days following the sixty-fifth birthday of such member, or his retirement date, whichever is later, but only in such installments and at such times and in such manner as the Trustees may determine. Any participant who reaches normal retirement age will be fully vested. The balance in the member's account at retirement will be segregated from the regular fund. It will not be subject to share in the earnings or losses of the fund for members who have not retired. The fund of the retired employee will be used to purchase an annuity, or placed in a savings account or the purchase of bonds and the earnings thereon shall be allocated to the member's account. In this event, the fund may be payable in cash or over a period of years as the Trustees may determine, but not more than 15 years. In the event that the money will be payable over a period of years to the participant, it will include any earnings of segregated fund. In the event that an employee, with the consent of the Company, remains in service after attaining age sixty-five years, any and all contributions of the Company shall continue to be apportioned and allocated to his account in accordance with the provisions of Section 2, Article II and the proportionate interest of such member shall not be distributed until his retirement.

Provided, However, that this provision shall be applied uniformly to all members under the same or similar circumstances.

When the profit-sharing plan was adopted, four of the six salaried employees of petitioner were eligible for participation. The other two employees were ineligible because they had been employed by petitioner for less than 2 years. The following schedule contains information about the four employees who were eligible:

| Name | Position | Date employed | Salary TYE Mar. 31, 1968 | Salary TYE Mar. 31, 1969 |
|---|---|---|---|---|
| Walter A. Maier | President | Jan. 1936 | $54,593.13 | $53,699.41 |
| Jakob Kramer | Superintendent | Aug. 1953 | 20,800.00 | 24,370.00 |
| Kathleen Senak | Clerk | Feb. 1966 | 5,390.79 | 6,110.55 |
| Kathryn Mansfield | Clerk | Jan. 1966 | 3,578.73 | 4,604.14 |

During the taxable years in issue, petitioner contributed to its profit-sharing trust on behalf of its eligible salaried employees and deducted such amounts on its income tax returns as follows:

| Name | TYE Mar. 31, 1968 | TYE Mar. 31, 1969 |
|---|---|---|
| Walter A. Maier | $8,188.95 | $8,054.12 |
| Jakob Kramer | 3,120.00 | 3,655.52 |
| Kathleen Senak | 808.65 | 916.21 |
| Kathryn Mansfield | 536.80 | 691.15 |
| Total deducted | 12,654.40 | 13,317.00 |

Walter A. Maier was petitioner's president and sole stockholder and Jakob Kramer was the plant superintendent. The duties of both men were supervisory in nature. The primary purpose in establishing the profit-sharing plan was to retain Kramer in petitioner's employ. He had received several job offers from other businesses and petitioner did not wish to lose him as petitioner was in the process of completing several important contracts. Petitioner established its profit-sharing plan upon Kramer's suggestion but Kramer was not a bargaining agent for other employees. It did not obtain advance approval of the plan's qualification from the Internal Revenue Service.

In order to participate in petitioner's pension fund, membership in the International Association of Machinists was required. The total number of hourly employees who would have been eligible for participation in the profit-sharing plan because of years of service but were ineligible because of their job classification was 80 in the taxable year ended March 31, 1968, and 38 in the taxable year ended March 31, 1969.[2] The following chart depicts the range of compensation between salaried participants in the profit-sharing plan and union employees who were excluded from participation:

| Compensation range | Excluded employees (1968) | Participants (1968) | Officer, shareholder, or supervisor participant (1968) | Excluded employees (1969) | Participants (1969) | Officer, shareholder, or supervisor participant (1969) |
|---|---|---|---|---|---|---|
| $1 to $2,000 | 21 | 0 | 0 | 4 | 0 | 0 |
| $2,001 to $3,000 | 12 | 0 | 0 | 0 | 0 | 0 |
| $3,001 to $4,000 | 4 | 1 | 0 | 0 | 0 | 0 |
| $4,001 to $5,000 | 1 | 0 | 0 | 0 | 1 | 0 |
| $5,001 to $6,000 | 2 | 1 | 0 | 0 | 0 | 0 |
| $6,001 to $7,000 | 9 | 0 | 0 | 0 | 1 | 0 |
| $7,001 to $8,000 | 5 | 0 | 0 | 8 | 0 | 0 |
| $8,001 to $9,000 | 7 | 0 | 0 | 2 | 0 | 0 |
| $9,001 to $10,000 | 15 | 0 | 0 | 9 | 0 | 0 |
| $10,001 to $11,000 | 1 | 0 | 0 | 10 | 0 | 0 |
| $11,001 to $12,000 | 2 | 0 | 0 | 2 | 0 | 0 |
| $12,001 to $13,000 | 0 | 0 | 0 | 2 | 0 | 0 |
| $13,001 to $14,000 | 0 | 0 | 0 | 0 | 0 | 0 |
| $14,001 to $15,000 | 1 | 0 | 0 | 1 | 0 | 0 |
| $15,001 to $20,000 | 0 | 0 | 0 | 0 | 0 | 0 |
| $20,001 to $25,000 | 0 | 1 | 1 | 0 | 1 | 1 |
| $25,001 to $50,000 | 0 | 0 | 0 | 0 | 0 | 0 |
| Over $50,000 | 0 | 1 | 1 | 0 | 1 | 1 |
| Total eligible employees | 80 | 4 | 2 | 38 | 4 | 2 |

The district director of internal revenue at St. Louis, Mo., notified petitioner on October 28, 1969, that its profit-sharing plan did not qualify under the provisions of sections 401 and 404 for the taxable years ended March 31, 1968, and March 31, 1969. Petitioner was informed by an agent in the Pension Trust Division of the district director's office at St. Louis that the profit-sharing plan was not approved because it did not provide for union employees. Acting upon the suggestion of the agent that the two highest paid union employees be in-

---

[2] Four union employees in 1968 and 36 union employees in 1969 had not satisfied the 2-year employment requirement contained in the profit-sharing plan.

cluded in the profit-sharing plan, petitioner submitted an "Application for Determination" for the qualification of its profit-sharing plan to the same district director in November 1970. In its application, labeled as an amended application, petitioner represented that its two highest paid union employees had been included in the profit-sharing plan by reason of the adoption of an amendment to the plan by the petitioner's board of directors on November 19, 1970. In the application petitioner also indicated that the corporation's contribution on behalf of W. A. Maier had been decreased from 15 percent of compensation to 12 percent. The compensation of these union employees during the taxable years in issue were as follows:

| Employee | TYE Mar. 31, 1968 | TYE Mar. 31, 1969 |
|---|---|---|
| Harry S. Nordman | $14, 122. 36 | $14, 929. 60 |
| Everett O. Young | 11, 650. 88 | 12, 420. 93 |

On December 23, 1970, the district director notified petitioner that its profit-sharing plan, as amended, was not qualified under section 401 or 404.

On its income tax returns for the taxable years ended March 31, 1968, and March 31, 1969, petitioner deducted $12,654 and $13,317, respectively, as contributions to the trust established under its profit-sharing plan. The deductions were disallowed by respondent in his statutory notice of deficiency.

ULTIMATE FINDINGS OF FACT

1. The finding of the Commissioner that the classification under the profit-sharing plan was discriminatory in favor of officers, shareholders, supervisors, and highly compensated employees was not arbitrary or unreasonable.

2. Petitioner's profit-sharing plan and its pension plan, considered together as one plan, discriminated in favor of officers, shareholders, persons whose principal duties consisted in supervising the work of other employees, and highly compensated employees.

3. The benefits of petitioner's employees in its profit-sharing plan were forfeitable at the time petitioner made its contributions to the plan.

OPINION

The sole issue is the deductibility of petitioner's contributions to a trust for its profit-sharing plan. Petitioner contends that deductions are allowable under section 404(a) (3) because the trust is exempt from taxation under section 501(a) as being a trust forming part of a profit-sharing plan qualified under section 401(a). In the alternative, petitioner claims the deductions under section 162.

The first question to be answered is whether petitioner's profit-sharing plan qualifies under section 401(a).[3] The profit-sharing plan, considered alone and not in connection with petitioner's pension plan, was not qualified for the years before us because it did not fulfill the requirements of section 401(a)(3) and (4). The plan covered no more than 5 percent of all petitioner's employees and no more than 10 percent of all eligible employees in either of the taxable years thereby not qualifying under section 401(a)(3)(A).

The plan did not qualify under section 401(a)(3)(B) because the Secretary or his delegate did not find the plan not to be discriminatory. Quite to the contrary, the district director refused to approve both the original plan in 1969 and the amended plan in 1970 by reason of his finding of discrimination in coverage in favor of officers, shareholders, supervisors, and highly compensated employees. He subsequently issued a statutory notice of deficiency to petitioner in which he determined that the plan was not qualified.

The Commissioner's refusal to find that petitioner's salaried-only classification was nondiscriminatory in favor of the prohibited group of officers, shareholders, supervisors, or highly compensated employees was neither arbitrary nor an abuse of discretion. *Ed & Jim Fleitz, Inc.*, 50 T.C. 384, 390 (1968). A salaried-only classification is not automatically considered to be nondiscriminatory. *George Loevsky*, 55 T.C. 1144 (1971), affd. 471 F. 2d 1178 (C.A. 3, 1973). As elaborated upon in his brief, the Commissioner applied a "fair cross-section" test to the profit-sharing plan and determined that the plan did not operate for the exclusive benefit of the employees in general. He found that

---

[3] SEC. 401. QUALIFIED PENSION, PROFIT-SHARING, AND STOCK BONUS PLANS.

(a) REQUIREMENTS FOR QUALIFICATION.—A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—

\* \* \* \* \* \* \*

(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either—

(A) 70 percent or more of all the employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding 5 years, employees whose customary employment is for not more than 20 hours in any one week, and employees whose customary employment is for not more than 5 months in any calendar year, or

(B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees; and

(4) of the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

only a small percentage of those employees in the lower compensation ranges were represented in the plan and that the entire middle compensation ranges of $7,000 to $15,000 were completely unrepresented in the plan so that the plan did not vertically dissect the entire compensation ladder of the corporation. The Commissioner did not act unreasonably in finding pursuant to section 401(a)(3)(B) that petitioner's salaried-only classification was discriminatory.

Due to our conclusion that neither petitioner's coverage nor its classification of employees covered by the profit-sharing plan satisfied the requirements of section 401(a)(3), we need not decide whether petitioner satisfied the requirement of section 401(a)(4) of nondiscrimination in contributions or benefits in favor of the prohibited group of employees.

Petitioner contends that its profit-sharing plan and its pension plan, considered as a single plan, qualified under section 401(a)(3). Considering the two plans as a whole the percentage of coverage requirements of section 401(a)(3)(A) is satisfied. The question remaining is, therefore, whether under section 401(a)(4) there exists any discrimination in contributions or benefits in favor of officers, shareholders, supervisors, or highly compensated employees.

We shall first examine the question of discrimination in contributions.

Petitioner argues for a comparison between the total contributions to the profit-sharing plan and those to the pension plan. Such a comparison, taking into consideration FICA contributions, is 30 percent to the profit-sharing plan and 70 percent to the pension plan.

This is obviously not the proper comparison because it could easily vary, depending upon the number of employees eligible under the plan. The comparison urged by respondent is appropriate. It compares the contributions to each plan as percentages of the salaries paid each group. *Loper Sheet Metal, Inc.*, 53 T.C. 385, 391 (1969). Only if the individual accounts of participants are examined can it be ascertained whether the combined plan discriminates in favor of officers, shareholders, supervisors, and highly compensated employees, for convenience hereinafter referred to as the prohibited group. *Bernard McMenamy, Contractor, Inc.*, 54 T.C. 1057, 1064 (1970), affd. 442 F. 2d 359 (C.A. 8, 1971).

An approach most favorable to petitioner includes as contributions petitioner's payments of FICA taxes although petitioner has not proved that its plans were properly integrated with social security benefits. As illustrated below, a comparison of the total value of peti-

tioner's contributions (plan contributions plus the assigned value of FICA taxes) reveals that the petitioner's contributions on behalf of its lowest paid, full-time hourly (union) employees earning between $5,001 and $6,000 [4] were never in excess of 10.1 percent of such employee's wages, and contributions on behalf of hourly employees in successively higher compensation ranges bore an even smaller ratio to their wages. The largest compensation range of union employees in the 2 years involved was that of $9,001 to $10,000. The total value of petitioner's contributions on behalf of employees did not exceed 7.5 percent of their wages.

In sharp contrast, the contributions on behalf of Maier and Kramer (including FICA taxes), who were the only members of the prohibited group, equaled 16 percent and 17 percent of their compensation for each of the respective years.

Viewed as a percentage of compensation, contributions in favor of the sole shareholder and the plant manager of petitioner were twice the amounts contributed on behalf of employees in the $9,001 to $10,000 salary range, which represented the majority of the union employees. The contributions, as a percentage of compensation, on behalf of the prohibited group were three times the amounts contributed on behalf of Nordman and Young, the highest paid union employees, whose wages were $14,000 and $12,000, respectively, during the taxable years involved. The contributions clearly discriminated in favor of the prohibited group and thus disqualified the combined plan under section 401(a)(4).

CONTRIBUTIONS TO COMBINATION OF PENSION AND PROFIT-SHARING PLAN, TAXABLE YEAR ENDED MAR. 31, 1969

| Employee or number of employees | Salaries or wages | Contributions | Assigned values of FICA taxes [1] | Values of total contributions | Ratio of total contributions to salaries or wages (percent) |
|---|---|---|---|---|---|
| Maier (shareholder) | $53,699.41 | $8,054.12 | $468.00 | $8,522.12 | 15.9 |
| Kramer (supervisor) | 24,370.00 | 3,655.52 | 468.00 | 4,123.52 | 17.7 |
| Senak (clerical) | 6,110.55 | 916.21 | 366.63 | 1,282.84 | 21.0 |
| Mansfield (clerical) | 4,604.14 | 691.15 | 276.24 | 967.39 | 21.0 |
| 0 (hourly) | 5,001–6,000 | 208.20 | 300.06–360.00 | 508.26–568.20 | 10.1–9.5 |
| 0 (hourly) | 6,001–7,000 | 208.20 | 360.06–420.00 | 568.26–628.20 | 9.5–9.0 |
| 8 (hourly) | 7,001–8,000 | 208.20 | 420.06–480.00 | 628.26–687.20 | 9.0–8.6 |
| 2 (hourly) | 8,001–9,000 | 208.20 | 468.00 | 676.20 | 8.5–7.5 |
| 9 (hourly) | 9,001–10,000 | 208.20 | 468.00 | 676.20 | 7.5–6.8 |
| 10 (hourly) | 10,001–11,000 | 208.20 | 468.00 | 676.20 | 6.8–6.1 |

[1] The values assigned to FICA taxes was 6 percent of the employees' compensation up to $7,800.

[4] We assume that the employees making less than $5,000 during these years were only part-time employees since the minimum hourly wage rate for union employees in 1968 was $2.75 per hour and $3 per hour in 1969.

CONTRIBUTIONS TO COMBINATION OF PENSION AND PROFIT-SHARING PLAN
TAXABLE YEAR ENDED MAR. 31, 1968

| Employee or number of employees | Salaries or wages | Contributions | Assigned values of FICA taxes [1] | Values of total contributions | Ratio of total contributions to salaries or wages (percent) |
|---|---|---|---|---|---|
| Maier (shareholder-officer)_ | $54,593.13 | $8,188.95 | $468.00 | $8,656.95 | 15.9 |
| Kramer (supervisor)_____ | 20,800.00 | 3,120.00 | 468.00 | .3,588.00 | 17.3 |
| Senak (clerical)_____ | 5,390.79 | 808.65 | 323.45 | 1,132.10 | 21.0 |
| Mansfield (clerical)_____ | 3,578.73 | 536.80 | 214.72 | 751.52 | 21.0 |
| 2 (hourly)_____ | 5,001–6,000 | 208.20 | 300.06–360.00 | 508.26–568.20 | 10.1–9.5 |
| 9 (hourly)_____ | 6,001–7,000 | 208.20 | 360.06–420.00 | 568.26–628.20 | 9.5–9.0 |
| 5 (hourly)_____ | 7,001–8,000 | 208.20 | 420.06–480.00 | 628.26–687.20 | 9.0–8.6 |
| 7 (hourly)_____ | 8,001–9,000 | 208.20 | 468.00 | 676.20 | 8.5–7.5 |
| 15 (hourly)_____ | 9,001–10,000 | 208.20 | 468.00 | 676.20 | 7.5–6.8 |
| 1 (hourly)_____ | 10,001–11,000 | 208.20 | 468.00 | 676.20 | 6.8–6.1 |

[1] The values assigned to FICA taxes was 6 percent of the employees' compensation up to $7,800.

In addition to discrimination in favor of the prohibited group as to contributions, the combined plan discriminated in favor of such group as to benefits. The prohibited group was covered by the profit-sharing plan and other eligible employees, except two clerical employees, were covered by the pension plan. We recognize that comparing the benefits of a profit-sharing plan to those of a pension plan is somewhat like comparing apples to oranges because the benefits from a pension plan are fixed and determinable while those of a profit-sharing plan depend upon the profits of the employer. *Loper Sheet Metal, Inc., supra* at 391. Aside from differences in the amounts of the benefits that could be received, other differences between the plans represent discrimination with respect to benefits.

The profit-sharing plan provided for annual vesting at a rate of 10 percent. There was no vesting in the pension plan until 10 years of coverage. "Vesting is an important benefit in any pension plan and is one which must be considered in reaching a decision as to whether a plan is discriminatory as to benefits." *United States* v. *Hall*, 398 F. 2d 383, 387 (C.A. 8, 1968).

Death benefits were payable on behalf of a pension plan participant only if the employee had participated in the plan for 3 years but the profit-sharing plan provided for full vesting of the participants' share of the plan regardless of the number of years of participation.

In case of disability, the profit-sharing plan participant was to receive a fully vested share up to the amount of the disability expenses incurred by the participant. The pension plan participant received nothing by reason of disability unless he had been covered by the plan for 5 years.

For an employee who continued to work after retirement, contributions to the profit-sharing plan were continued, enhancing the benefits, but benefits from the pension plan were not enhanced for an employee covered by the pension plan.

The differences in benefits described above demonstrate discrimination in benefits within the meaning of section 401(a)(4).

Petitioner argues, in the alternative, that its contributions to the profit-sharing plan were deductible under section 162 because they were fixed liabilities at the ends of the respective taxable years of contributions and they were ordinary and necessary business expenses.

Petitioner's argument ignores section 404(a)(5) which, for the taxable years before us, provided that if contributions were made to a *nonqualified* plan the contributions would be deductible only if the employees' rights under the plan were nonforfeitable at the time the contributions were paid.

Nonforfeitability is defined in section 1.402(b)–1(a)(2)(i), Income Tax Regs., as a beneficial interest in which there is no contingency which would cause the employee to lose his rights in the contribution.

In *Hazel W. Pollnow*, 35 T.C. 715 (1961), we adopted the test recited above which appears in the current regulations. Although that case involved regulations under the Internal Revenue Code of 1939, the language was identical to the language of the regulations applicable here.

The rights of petitioner's employees under the profit-sharing plan were clearly forfeitable at the times petitioner made its contributions to the plan. Article V, section 1, of the profit-sharing plan provides in part as follows:

except that the proportionate interest of any member or ex-member who shall be discharged by the company for dishonesty, or any other act which causes the company monetary loss, or for disclosure of trade secrets, or for entering the service of a competitor after retirement, shall be forfeited and such interest shall be used to reduce the Company's contribution in subsequent years.

Petitioner's contributions to its profit-sharing plan are, therefore, not deductible for the taxable years ended March 31, 1968, and March 31, 1969, under section 162 or section 404(a) because the provisions of section 404(a)(5) are not satisfied.

*Decision will be entered for the respondent.*