BABST SERVICES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 842–75. Filed November 4, 1976.

*R. Richardson King,* for the petitioner.
*Deborah R. Jaffe,* for the respondent.

RAUM, *Judge:* The Commissioner determined a deficiency of $5,458.33 in petitioner's Federal corporate income tax for the fiscal year ended May 31, 1971. At issue is the deductibility of $11,325 petitioner contributed to a profit-sharing plan established for its employees.

FINDINGS OF FACT

The parties have filed a stipulation and supplemental stipulation of facts, along with exhibits, which are incorporated herein by this reference.

Petitioner Babst Services, Inc., was incorporated under the laws of the State of Louisiana on June 23, 1969. At the time it filed the petition herein its principal office was located in Metairie, La. Petitioner filed its U.S. Corporation Income Tax Return for the taxable year with the District Director of Internal Revenue at New Orleans, La.

Petitioner is a mechanical and plumbing contractor. In the conduct of that business it employs both salaried and hourly paid personnel. The latter, which are far greater in number, are all union members. During the calendar year 1970 petitioner employed at one time or another 101 such employees.

On May 13, 1971, petitioner adopted a profit-sharing plan, to be effective retroactively from June 1, 1970. The plan extended coverage only to salaried employees with at least 1 year of service who had attained the age of 25. At the time the plan was adopted petitioner had 51 employees. Of these, 44 were hourly paid employees, ineligible for coverage. Three salaried employees were excluded from coverage because they did not have at least 1 year of service. The remaining four employees were covered.

The four employees covered under the plan during the taxable year were Emile M. Babst III, Z. Harry Kovner, Lola R. Babst, and Robert Thompson. Emile Babst owned 60 percent of petitioner's outstanding voting stock. He was its president and had been employed by it since its incorporation. Harry Kovner owned 20 percent of petitioner's voting stock. He had been employed by the corporation since July 1969, and was its vice president. Lola Babst, Emile's wife, had been employed by petitioner since January 1970, and was a designated officer of the corporation, its secretary. Mrs. Babst

did not attend board meetings or prepare minutes thereof, but, in her capacity as secretary, did sign the minutes prepared by others. She was primarily responsible for various tasks such as posting accounts and paying bills, and had authority to sign checks on behalf of the corporation without a cosignature. She did not supervise other employees. The Babsts were married at the time Emile acquired stock in petitioner, and the stock was acquired with community funds. The remaining participant in the profit-sharing plan, Robert Thompson, was petitioner's "Field Representative." He had been employed by the corporation since September 1969, and was neither an officer nor shareholder.[1]

During the fiscal year ended May 31, 1971, the four employees covered under petitioner's profit-sharing plan received salaries and "direct payments" from petitioner as follows:

| | Base salary | Direct payments[2] | Total |
|---|---|---|---|
| Emile M. Babst III. | $30,000 | $9,881.48 | $39,881.48 |
| Z. Harry Kovner .... | 20,000 | 3,738.49 | 23,738.49 |
| Robert Thompson... | 17,000 | 1,677.36 | 18,677.36 |
| Lola R. Babst ......... | 8,500 | 780.00 | 9,280.00 |

The positions and salaries of the three salaried employees not covered under the plan during the taxable year were as follows:

| Position | Weekly salary | Salary through 5/26/71 |
|---|---|---|
| Estimator.................................................. | $230 | $9,970 |
| Expediter................................................... | 230 | 8,570 |
| Clerk/typist............................................... | 90 | 2,518 |

The 44 hourly employees excluded from coverage under the profit-sharing plan all belonged to unions which maintained their own pension plans. Petitioner made contributions to

---

[1] The only shareholder of record during the taxable year, other than Emile M. Babst III and Z. Harry Kovner, was Thomas B. Lemann. He was not employed by petitioner.

[2] The term "direct payments" was used by the parties in their stipulation and was not otherwise explained. It appears to refer to payments in the nature of bonuses and does not include amounts contributed to the profit-sharing plan on behalf of the participants.

these plans on behalf of each such employee for each hour that he was employed. The job titles, union affiliations, hourly rates of compensation, and hourly rates of contribution to the applicable union pension plans for these employees were as follows:

| Job title | Number of employees in the category | Hourly rate of compensation | Hourly contribution to union pension plan |
|---|---|---|---|
| *Construction and General Laborers Local Unions No. 689 or 1450* | | | |
| Laborer | 5 | $4.01 | $0.10 |
| *Plumbers and Steamfitters Union* | | | |
| Foreman | 14 | 7.30 | 0.40 |
| Journeyman | 22 | 6.80 | 0.40 |
| Apprentice | 1 | 3.78 | 0.40 |
| Apprentice | 2 | 2.52 | 0.40 |
| Total hourly employees | 44 | | |

Eleven of those 44 hourly employees had been employed by petitioner for 1 year or more, as of May 13, 1971. These employees, their job titles, hourly rates of pay, and their total compensation for fiscal year ended May 31, 1971, were as follows:

| Hourly employees with at least 1 year of service | Job title | Hourly rate of pay | Compensation for FYE 5/31/71— |
|---|---|---|---|
| J. McGinnis | foreman | $7.30 | $16,423.02 |
| G. Barr | journeyman | 6.80 | 15,861.71 |
| C. Burkenstock | foreman | 7.30 | 14,984.91 |
| G. Lumetta | foreman | 7.30 | 14,220.69 |
| E. A. Coon, Jr | foreman | 7.30 | 13,425.72 |
| K. Madere | foreman | 7.30 | 13,399.08 |
| M. Gourgues | journeyman | 6.80 | 13,301.34 |
| D. Stauder | foreman | 7.30 | 13,155.49 |
| R. Gremillion | journeyman | 6.80 | 12,944.75 |
| E. Gremillion | laborer | 4.01 | 9,242.37 |
| R. Bauer | journeyman | 6.80 | 8,291.65 |

J. McGinnis was the highest paid of all the employees excluded from participation in petitioner's profit-sharing plan.

On June 1, 1971, petitioner submitted its application for determination of qualification under section 401(a), I.R.C. 1954, of its profit-sharing plan to the District Director of

Internal Revenue at New Orleans, La. On April 13, 1972,[3] following notification that it had been determined that the plan was not qualified, petitioner amended the plan by reducing the minimum service requirement from 1 year to 60 days and lowering the minimum age for eligibility from 25 to 21. On June 7, 1972, petitioner was notified by the District Director that the plan as amended qualified under section 401. Petitioner was also notified that it had been determined that the plan was not qualified for plan years ending prior to June 1, 1971.

For the fiscal year ended May 31, 1971, petitioner contributed $11,325 to its profit-sharing plan. The contribution was allocated as follows:

| | |
|---|---|
| Emile M. Babst III | $4,500 |
| Z. Harry Kovner | 3,000 |
| Robert Thompson | 2,550 |
| Lola R. Babst | 1,275 |
| | 11,325 |

On its Federal income tax return for that fiscal year petitioner deducted the full amount of this contribution from its gross income. In his deficiency notice the Commissioner determined that petitioner's profit-sharing plan "does not meet the requirements for qualification under section 401(a) of the Internal Revenue Code," and accordingly, disallowed the entire deduction.

### OPINION

Petitioner seeks a deduction of $11,325 which it contributed to the profit-sharing trust. Such deduction is available under section 404(a)(3) of the Code,[4] provided that the trust is exempt under section 501(a), and that exemption in turn depends upon whether the trust under the profit-sharing plan was a "qualified trust" within the meaning of section 401(a). The sole issue before us is the applicability of section 401(a), pertinent portions of which are set forth in the margin.[5] In

---

[3] The stipulation of the parties refers to this date in one paragraph as 1971 and in another as 1972. It would seem that the former is a typographical error.

[4] All Code section references are to the specified provisions of the Internal Revenue Code of 1954 as they were in effect for the taxable year in issue.

[5] SEC. 401. QUALIFIED PENSION, PROFIT-SHARING, AND STOCK BONUS

particular, the controversy revolves primarily around section 401(a)(3)(B).

Together, the provisions of sections 401(a)(3)(B) and 401(a)(4) are designed to deny the claimed deduction where the plan is discriminatory in favor of one or more of four categories of employees, namely, officers, shareholders, supervisory personnel, and highly compensated employees, sometimes referred to in the aggregate as the prohibited group. Section 401(a)(3)(B) deals with *coverage,* and in effect conditions qualification of the plan upon a *finding* by the Secretary or his delegate that the classification of employees eligible to participate in the plan is not discriminatory in favor of the prohibited group. Section 401(a)(4), on the other hand, is concerned with the *functioning* of the plan, and it in substance makes qualification turn upon whether "the contribution or benefits provided under the plan do not discriminate in favor of" the prohibited group.

In respect of the coverage requirements we note at the outset that they might conceivably have been satisfied by the alternative provisions of section 401(a)(3)(A) if petitioner had designated as part of its plan the contributions which it made to the union pension plans on behalf of its hourly paid

---

(a) REQUIREMENTS FOR QUALIFICATION.—A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section.
   * * *

(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either—

(A) 70 percent or more of all the employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding 5 years, employees whose customary employment is for not more than 20 hours in any one week, and employees whose customary employment is for not more than 5 months in any calendar year, or

(B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees; and

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

employees.[6] Section 401(a)(3)(A) establishes an automatic percentage test, which, if satisfied, was obviously thought to insure against discriminatory coverage. By combining the hourly paid employees with the salaried employees covered by the profit-sharing plan, it is plain that the 70-percent requirement of section 401(a)(3)(A) would readily be satisfied. However, petitioner has chosen not to designate its contributions to the union funds as part of its plan here under consideration,[7] and insists merely that the profit-sharing plan, considered by itself, satisfies the conditions of section 401(a)(3)(B). We hold that the requirements of section 401(a)(3)(B) have not been met.

Since, as the record plainly indicates, the plan has not been found by the Secretary or his delegate not to be discriminatory in the manner prohibited by section 401(a)(3)(B), we must sustain the deficiency herein unless we are persuaded that the Commissioner erred in refusing to make such a finding. To be sure, a classification like the one in petitioner's plan which restricts eligibility to salaried employees is not necessarily fatal. Section 401(a)(5) expressly states that a "classification

---

[6] Cf. *Liberty Machine Works, Inc.*, 62 T.C. 621, 632, affirmed 518 F.2d 554 (8th Cir.); *Loper Sheet Metal, Inc.*, 53 T.C. 385, 391; S. Rept. No. 1631, 77th Cong., 2d Sess. 136–137; sec. 1.401–3(f), Income Tax Regs.

[7] Whether the union pension plans could be combined with petitioner's own plan within the strict terms of sec. 401(a)(3) may not be entirely free from doubt. However, the Government appears to assume that such was possible—a matter on which we express no opinion, since petitioner does not rely upon sec. 401(a)(3)(A), and since it has not in any event made the designation required by sec. 401(a)(3). Nevertheless, even if petitioner had designated the union pension plans as part of its own plan and thus at least arguably satisfied the demands of sec. 401(a)(3)(A), it would then be faced with the necessity of showing that the combined plans in their operative effect did not favor the prohibited group as required by sec. 401(a)(4). In this latter respect, although the burden was not upon it, the Government nevertheless undertook to present expert actuarial evidence intended to establish that there would have been complete failure to satisfy the conditions of sec. 401(a)(4)—not only as to the discriminatory character of the amount of employer contributions but also as to the discriminatory character of the benefits provided. That evidence was highly persuasive (cf. *Liberty Machine Works, Inc.*, 62 T.C. 621, affirmed 518 F.2d 554 (8th Cir.); *Loper Sheet Metal, Inc.*, 53 T.C. 385), but since petitioner has made no argument based upon sec. 401(a)(3)(A) that would bring sec. 401(a)(4) into play, we have not found it necessary to make any findings in respect of the discrimination forbidden by sec. 401(a)(4). Nor, in view of the conclusion hereinafter reached by us that petitioner has not satisfied sec. 401(a)(3)(B), is it necessary to consider sec. 401(a)(4) in the context of the more limited issue presented to us by petitioner. Its failure to meet the requirements of sec. 401(a)(3)(B) is thus dispositive of the case without any further consideration of sec. 401(a)(4).

shall not be considered discriminatory * * * merely because it is limited to salaried * * * employees."[8] But this provision means simply that "a salaried-only classification will not be considered discriminatory per se." *George Loevsky,* 55 T.C. 1144, 1149, affirmed per curiam 471 F.2d 1178 (3d Cir.), certiorari denied 412 U.S. 919. The question still remains whether in the circumstances of the particular case the eligibility requirements as a whole operate so as to discriminate in favor of the prohibited group. *Cornell-Young Co. v. United States,* 469 F.2d 1318, 1324–1325 (5th Cir.); *Commissioner v. Pepsi-Cola Niagara Bottling Corp.,* 399 F.2d 390, 394 (2d Cir.), reversing 48 T.C. 75; *Liberty Machine Works, Inc.,* 62 T.C. 621, 631; *George Loevsky, supra* at 1149; *Ed & Jim Fleitz, Inc.,* 50 T.C. 384, 389–391; sec. 1.401–1(b)(3), Income Tax Regs.; Rev. Rul. 66–13, 1966–1 C.B. 73; Rev. Rul. 66–14, 1966–1 C.B. 75. And in analyzing each case it must be kept in mind that we have recognized that Congress has specifically committed that judgment, in the first instance, to the discretion of the Secretary or his delegate, whose determination "should not be set aside unless it is found to be arbitrary or an abuse of discretion." *Ed & Jim Fleitz, Inc., supra* at 390. Accord, *Liberty Machine Works, Inc., supra* at 631; *George Loevsky, supra* at 1149. Cf. *Commissioner v. Pepsi-Cola Niagara Bottling Corp.,* 399 F.2d 390, 393 (2d Cir.), reversing 48 T.C. 75; *Cornell-Young Co. v. United States, supra* at 1324, 1326; *John Duguid & Sons, Inc. v. United States,* 278 F.Supp. 101, 106 (N.D. N.Y.).[9]

During the taxable year here in issue, the classifications provided for in petitioner's profit-sharing plan excluded from coverage all but 4 of 51 employees. Those excluded consisted of not only all of the hourly paid employees, but also three of the lower paid salaried employees. Thus, of the four employees eligible to participate in the plan, three—Emile M. Babst III, Z. Harry Kovner, and Robert Thompson—were the three employees most highly compensated by petitioner. Further-

---

[8] Similarly, classifications based upon length of service or age are not necessarily discriminatory. Sec. 1.401–3(d), Income Tax Regs.

[9] Compare also *Dillard-Waltermire, Inc. v. Campbell,* 255 F.2d 433, 435–436 (5th Cir.); *Grenada Industries, Inc.,* 17 T.C. 231, 235, affirmed 202 F.2d 873 (5th Cir.), certiorari denied 346 U.S. 819; *Stephens Marine, Inc. v. Commissioner,* 430 F.2d 679, 686 (9th Cir.).

more, not only were Emile Babst and Harry Kovner also officers and stockholders, but none of the excluded employees appear to have been either officers or stockholders. In the circumstances, we cannot conclude that the Commissioner erred in determining that the plan was discriminatory. Cf. *Commissioner v. Pepsi-Cola Niagara Bottling Corp.*, 399 F.2d at 393–394; *Cornell-Young Co. v. United States*, 469 F.2d at 1324; *George Loevsky*, 55 T.C. at 1149–1150.

It may be, as petitioner suggests, that some of the hourly paid employees excluded from participating in the profit-sharing plan were "persons whose principal duties consist[ed] in supervising the work of other employees," one of the four classes of employees in whose favor discrimination is prohibited. Although the duties of the hourly paid employees are not described in the record, some of them did have the job title of "foreman." But whether the plan's eligibility requirements generally favored supervisory employees is of no consequence in the circumstances of this case. As we have already noted, those requirements did operate so as to favor petitioner's officers, shareholders, and highly compensated employees, the other three classes of employees in whose favor discrimination is prohibited. Moreover, what is particularly significant for purposes of section 401(a)(3)(B) is not that some of the excluded employees may have been members of the prohibited group, but that of those employees permitted to participate in petitioner's plan a disproportionate number, if not all, were members of that group.

Petitioner would ascribe much significance to the fact that the plan covered Lola R. Babst, who was paid less than nearly all of those excluded hourly paid employees with at least 1 year of service. It contends that she was not in fact an officer, although she had the title of secretary, and that she should not be regarded as a stockholder despite the fact that the shares held in her husband's name were purchased with community funds and that she had an interest therein under Louisiana community property laws. We do not find these arguments persuasive. To be sure, Lola Babst was not highly paid and did not perform supervisory tasks, but she was an officer of the corporation and not all of her services were merely nominal—certainly, petitioner does not suggest that she did not earn the $9,280 compensation paid to her during

the taxable year. Moreover, in view of the fact that the 60-percent stock interest held nominally in her husband's name had been purchased with community funds, we reject the notion that she should not be treated as a stockholder within the meaning of the statute involved herein. Cf. *Homer W. Forrester*, 49 T.C. 499; *Arthur B. Clemens*, 28 T.C.M. 1225, affirmed per curiam 453 F.2d 869 (9th Cir.). However, even were we to accept these contentions we would reach the same result. For in the circumstances of this case, the fact that not every plan participant might have been an officer, stockholder, supervisor, or highly compensated employee does not alter the fact that one might reasonably conclude that the plan as a whole discriminated in favor of such employees. *Cornell-Young Co. v. United States*, 469 F.2d at 1324; *Liberty Machine Works, Inc.*, 62 T.C. at 631–632; *George Loevsky*, 55 T.C. at 1149–1150. And on the record before us it is our judgment that the plan as a whole did discriminate in favor of employees in the prohibited group.

Finally, there is no merit to the possible suggestion that Congress intended that, in applying the coverage requirements of section 401(a)(3)(B), the Commissioner and the courts were to exclude from consideration employees covered under union pension plans. Such employees are to be considered despite the fact that, as a result, an employer might not be able to establish a qualified plan with a specific level of benefits for its nonunion employees, where its union employees have opted through collective bargaining for nonpension benefits in lieu of pension benefits, or nonpension benefits plus a lower level of pension benefits. Cf. H. Rept. No. 93–807, p. 48, 1974–3 C.B. Supp. 283; *George Loevsky, supra* at 1151. To be sure, this eventually became a matter of concern for Congress. H. Rept. No. 93–807, p. 48, 1974–3 C.B. Supp. 283. But it was not until the enactment of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93–406, 88 Stat. 829, that explicit consideration was given to the problem. The Code, as modified by ERISA, now provides in section 410(b)(2)(A) that for purposes of the eligibility requirements:

(2)* * * there shall be excluded from consideration—
(A) employees not included in the plan who are included in a unit of employees covered by an agreement which the Secretary of Labor finds to

be a collective bargaining agreement between employee representatives and one or more employers, if there is evidence that retirement benefits were the subject of good faith bargaining between such employee representatives and such employer or employers * * *

However, this new provision, which by its very terms can be availed of if and only if certain specified conditions are met, was made applicable prospectively. Sec. 1017, Pub. L. 93–406, 88 Stat. 829, 932–935. Furthermore, the relevant legislative history plainly indicates that Congress considered this new provision not in any way declaratory of existing law, but rather, a change which "eases the application' of the provisions of existing law." H. Rept. No. 93–807, pp. 48–49, 1974–3 C.B. Supp. 283–284; S. Rept. No. 93–383, pp. 41–43, 1974–3 C.B. Supp. 120–122; cf. *Fairbanks v. United States,* 306 U.S. 436; *Abraham M. Katz,* 27 T.C. 783, 786; *Frank W. Williamson,* 27 T.C. 647, 661–662.

We hold that the failure to meet the requirement of section 401(a)(3)(B) results in a determination that petitioner's plan was not a "qualified trust" within the meaning of section 401(a), and that the contributions in question are therefore not deductible.

*Decision will be entered for the respondent.*

Reviewed by the Court.

DRENNEN, *J.,* dissenting: I respectfully disagree with the majority in its conclusion that the retirement plan here involved failed to meet the requirements of section 401(a)(3)(B) of the Code. That section recognizes as qualified a plan which benefits "such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of" the prohibited group. It must also meet the requirements of section 401(a)(4). As pointed out in the majority opinion, section 401(a)(3)(B) deals with coverage, or eligibility requirements, while section 401(a)(4) is concern'ed with whether in operation the contributions and benefits under the plan favor the prohibited group.[1]

---

[1] The majority opinion does not decide whether this plan meets the requirements of sec. 401(a)(4) and neither have I.

The majority relies to a considerable extent on the fact that respondent had not made a *finding* that the classification used for eligibility to participate in this plan (all salaried employees 25 years of age who had been employed 1 year) is not discriminatory in favor of the prohibited group, and on petitioner's failure to carry its burden of proof. I think very little weight can be given to those reasons in deciding that this plan is discriminatory under section 401(a)(3)(B). In the notice of deficiency respondent determined that the contributions to the plan were not deductible "since the inclusion of only 4 of the 15 eligible employees, all in the prohibited group, constitutes the discrimination prohibited by section 401(a)(4) of the Code."[2] In his opening brief respondent says "the decisive question in the present case is whether, considering the petitioner's profit-sharing plan and the two union pension plans as a unit, contributions and benefits are discriminatory in favor of the prohibited group under section 401(a)(4)." A similar statement is made at the beginning of respondent's reply brief. It thus seems clear that respondent considered that when the two union pension plans and the profit-sharing plan were considered as a unit, the coverage requirements of section 401(a)(3)(A) were met,[3] and so he was not concerned with whether the classification met the requirements of section 401(a)(3)(B); he was concerned with section 401(a)(4), which the majority finds unnecessary to discuss. Under such circumstances it hardly seems proper that petitioner should have the burden of proving error in respondent's determination that the classification did not meet the requirements of section 401(a)(3)(B).

I recognize that the Court may consider whether the plan met the requirements of either section 401(a)(3)(A) or (B) even though respondent seemingly gave little consideration to it; if for no other reason, because petitioner did. But I would approach the question in this case without reliance on burden of proof. I would also approach it on the premise that the salaried-only classification should not be considered discriminatory under the circumstances[4] so that I am concerned only

---

[2] This is wrong—there were only seven salaried, and thus eligible, employees.

[3] I have doubts that the three plans could be considered as a unit since petitioner had not so designated them and in fact disclaimed the fact on brief.

[4] Respondent apparently agrees with this premise because he approved the plan

with whether the remaining eligibility requirements were discriminatory within the meaning of section 401(a)(3)(B).

There were only seven salaried employees, four of whom were eligible for coverage and three of whom were not, *when the plan was adopted,* simply because they were either not then 25 years of age or had not then had 1 year of service. Admitting that the four eligible employees may have been within the prohibited group, the other three would have become eligible within a short time had they remained as employees of the company. I believe it would have been arbitrary and unreasonable for respondent to have found that these very minimal eligibility requirements would have made the classification discriminatory within the meaning of section 401(a)(3)(B), even if he had done so. I believe the majority opinion is in error in so finding. I believe the majority loses sight of its stated premise that section 401(a)(3)(B) deals with *coverage* while section 401(a)(4) deals with whether in *operation* the plan is discriminatory.

GOFFE, J., agrees with this dissent.

---

the following year with amendments only with respect to years of service (reduced to 60 days) and age (reduced to 21).